IN THE SUPREME COURT OF THE STATE OF MONTANA

Case No. DA 08-0271

STATE LAW LIBRARY

JUL 0 9 2008

OF MONTANA

FILED

JUL 0 8 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

* * * * * * * * * *

KEITH R. & MARIE E. SWINGER

Defendants and Appellants

v.

GARY E. COLLINS

Plaintiff and Apellee

* * * * * * * * * *

ON APPEAL TO

THE SUPREME COURT OF THE STATE OF MONTANA

PURSUANT TO THE RULES OF APPELLANT PROCEDURE

FOLLOWING DISTRICT COURT JUDGE DOUGLAS G. HARKIN'S

RULING AND ORDER IN DV-06-724

* * * * * * * * * *

BRIEF OF THE APPELLANTS

* * * * * * * * * *

Keith and Marie Swinger
6055 Bitterroot Road
Missoula, Montana 59804
Pro Se for the Appellants

Douglas D. Harris
P. O. Box 7937
Missoula, Montana 59807-7937
Attorney for Appellee

# CONTENTS

Table of cases                                          I

Table of Statutes                                       II

Table of Rules                                          III

Table of Exhibits                                       IV

Issues for Review                              Pages 1 - 3

Statement of the Case                          Pages 4 - 12

Statement of the Facts                         Pages 13 - 16

Statement of Standard of Review                Pages 17 - 18

Summary of Argument                            Pages 19 - 20

Argument                                       Pages 21 - 22

Relief Sought                                  Pages 23 - 25

Judgement of Findings of Fact,
    Conclusions of Law and Order               Pages 26 - 29


Certificate of Compliance

Certificate of Mailing

Exhibits bound separately in Appendix

## TABLE OF CASES CITED

*Bauma v. Bynum Irrigation District*, 139 Mont. 360, 364, P.2d 47,
47 (1961)                          Exhibit # 17 &    Page 17

*Boylan v. VanDyke*, 247 Mont. 259, 264, 806 P.2d 1024 (1991)          Page 17

*Butler v. Germann*, 1067 Mont. 822 P.2d (1991)          Page 17

*Carbon County v. Union Oil Reserve Oil Co.* 271 Mont. 459, 469,
898 P.2d 680, 686   (1995)          Page 17

*Cereck v. Albertsons, Inc.* 195 Mont. 409, 411, 637 P.2d 509,
520 (1981)          Page 21

*Chambers v. Nasco, Inc.* U. S. Supreme Court, 111 St. Ct. 2123,
2133, 115 L. Ed. 2d 27, 45   (1991)          Page 23

*Christensen V. Britton*, 248 Mont. 393, 401-402, 784 P.2d
908, 913   (1989)          Page 17

*City Motor Co. Inc. v. District Court*, 166 Mont. 52, 54, 530
P.2d 486 (1975)          Page 21

*Downs v. Smyk*, 185 Mont. 16, 20, 604, P.2d 307, 310 (1980)          Page 21

*Faust v. Utility Solutions*, 2007 Mt. 326, 340 Mont 183,
173 P.3d 1183          (2007)          Page 21

*Fleming V. Fleming Farms Inc.* 221 Mont. 237, 241, 717 P.2d
1103, 1005 (1986)          Page 21

*Foy v. Anderson*, 176 Mont. 507, 511-512, 580 P.2d 114, 116-117
(1978)          Page 23

*Goodover V. Lindey's*, 255 MT 430, 444, 843 P.2d 765 Mont. LEXIS
327; 49 Mont. St. Rep. 1059          (1992)          Page 21

*Holmstrom Land Co. V. Hunters*, 182 Mont. 43, 48-49, 595
P.2d 360, 363          (1979)          Page 23

*Interstate Prod. Credit Ass'n v. DeSayes*, 250 Mont. 320, 323,
830 P.2d 1285, 1287          (1991)          Page 22

*Marriage of Nickolaisen*, 257 Mont. 1, 5, 847 P.2d 287, 289
(1993)          Page 20

*Morton v. M.W. M. Inc.* 263 Mont. 245, 249 868 P.2d 576, 579
(1994)          Page 21

*Pare v. Morrison*, 241 Mont. 218, 222, 786 P.2d 655, 657 (1990)          Page 17

*Stickney v. State, County of Msla*, 195 Mont. 415, 418, 636
P.2d 860, 862          (1981)          Page 23

*Swinger v. Collins,* 1999 MT 202, 295 Mont. 447, 984 P.2d 151      Page 6 & 26

*Swinger v. Collins,* No. 01-157, 2001 MT 265N      Page 7

*Thorton V. Sangstad,* 263 Mont. 390, 401, 868 P.2d 633, 640 (1994)    Page 21

*Wareing v. Schreckendgust,* 280 Mont. 196, 200, 930 P. 2d 37, 41    Pg. 17 & 22

# TABLE OF STATUTES

25-12-101 - A judgement or order in a civil action, except when expressly made final by this code, may be prescribed by the Rules of Appellate Procedure, and not otherwise. (Page 16)

26-1-102 (5) - "Direct evidence" is that which proves a fact within an inference or presumption and which in itself, if true, establishes the fact. "Circumstantial evidence" cannot be based on testimony only, especially when the witness has an interest in the outcome. (Page 14)

26-1-402 - A party has the burden of persuasion as to the existence of each fact essential to the claim for relief asserted. (Page 14)

26-3-205 - Rules of evidence, Rule # 102 The purpose of evidence is to ascertain the truth and justly determine the proceedings. Rule 103 (b) states an erroneous ruling may result from excluding evidence. (Pg. 14)

26-3-301 (2) - All presumptions are disputable (Page 13)

26-3-401 - Relevant evidence determines action (Page 13)

27-1-318 - The detriment caused by the wrongful occupation of real property is deemed to be the value of the use of the property for the time of such occupation. (Page 16)

70-1-101 and 70-1-303 - The owner is entitled to full and unfettered use of his property. (Page 16)

70-16-201 - The bed of a stream is owned as it crosses property (Page 16)

70-17-112 - Ditch easements by implication (Page 16)

70-17-112 (5) - Attorney fees in successfully prosecuting (Page 16)

85-2-102 (17) - Definitions of surface and ground water (Page 13 & 28)

85-2-103 (2) - Measurement of water as diverted from source (Page 13 & 28)

85-2-103 (3) - Measurement requirement does not change water decreed by a court prior to July 1, 1899. (Page 13 & 28)

85-2-114 - Prevention of waste, if a person is wasting water, or using water unlawfully, he is subject to judicial enforcement. (Page 13)

85-2-116 - Legal assistance on water rights must be preformed by County Attorney's office (Page 13)

85-2-125 - Recovery of attorney fees by prevailing party if a water permit case is appealed (Page 15)

85-2-237 - Reopening and review of decrees, including due to (iii) fraud and misrepresentation of adverse party. (Pages 13 and 28)

# TABLE OF RULES

## MONTANA RULES OF EVIDENCE, Title 26

Rule 102 - The purpose of evidence is to ascertain the truth and justly determine the proceedings.

Rule 103 (a) - An erroneous ruling may result from excluding evidence.

Rule 201 - Judicial notice of fact is not subject to reasonable dispute in that it is (2) capable of accurate and ready determination by resort to other sources when accuracy cannot be reasonably questioned.

Rule 301 (1) - Presumption that the law requires a fact be ascertained from previous proceedings is incorrect.

Rule 301 (2) - All presumptions are disputable, and may be controverted by a preponderance of evidence contrary to the presumption.

Rule 401 - Relevant evidence has tendency to make the existence of any fact that is of consequence to the determination of action more probable than without the evidence.

Rule 402 - All relevant evidence is admissible.

Rule 607 - The credibility of a witness may be attacked.

Rule 802 - Hearsay is usually prohibited.

## MONTANA RULES OF CIVIL PROCEDURE - Title 25, Chapter 20

Rule 5 (a) - Findings of fact by District Court erroneous

Rule 12 (c) - Motion for Judgement on the pleadings

Rule 41 - Dismissal of Actions

Rule 46 - Objection to Court Rulings

Rule 52 (a) - Appealed errors can overturn judgements

Rule 58 - In Actions without jury, the court shall find facts specially and state separately its conclusions of law.

Rule 61 - Mistakes, inadvertence, excusable neglect, newly found evidence, fraud etc are causes for appeal.

Rule 4 (1) (B) - An Interlocutory Judgement is an order that determines a preliminary issue, which enables the court to render a final judgement, but does not finally decide the case.

Rule 6 (5) - Orders & Judgment that are not applicable include those made in a case of contempt judgements <u>except</u> as provided in section 3 (j).

Section 3 (j) states contempt judgements that includes an ancillary order which effects the substantial rights of the parties involved may be appealed.

# TABLE OF EXHIBITS

1. Water Rights of Douglas G. Harkin         Pages 1 - 4, 14 & 16

2. $50.00 Receipt for 8" closeable culvert in 1992      Page 7

3. Water flow Calculation Chart          Page 7

4. Photos of Blastics pumps, Collins flooding & Swingers driveway 1996   Pg 8

5a. Photos of removal of debris from Swingers pond     Page 8

5b. Photos of removal with backhoe & dump truck      Page 8

6. Statement of Al Gleason for 14 hours @ $60.00 October 19, 1996   Page 8

7. Findings of fact, Conclusions of Law & order of December 12, 2000   Pg. 8

8. Minutes of ruling dated September 11, 2001       Page 8

9. Photos of Service call & Damage to pump and pipe May 6, 2006   Page 9

10. Affidavit of Gary Collins filed August 8, 2006      Page 10

11. $478.00 Receipt for new pump May 19, 2007       Page 10

12. $75.00 B & D Pump Service service call May 31, 2007    Page 10

13. $3,600.00 Bill from Jerome Drilling Co. July 11, 2007    Page 10

14. Photos of Collins' sandbags July 22nd and October 11, 2007    Page 11

15. Collins' list of witnesses & Exhibits filed November 1, 2007    Page 11

16. Collins' Findings of Fact, Conclusions of Law & Order submitted
     by Attorney Douglas Harris November 1, 2007     Page 11

17. Proposed Findings of Fact & Conclusions of Law submitted by
     Attorney Douglas Skjelset April 18, 2008      Page 12

18. Proposed Findings of Fact, Conclusions of Law & Order submitted
     pro se by Swingers April 29, 2008       Page 12

19. Swinger's Motion for Summary Judgement on Pleadings filed
     April 29, 2008          Page 12

20. Swingers Brief, with 22 exhibits filed April 29, 2008    Page 12

21. Minutes & Note of Ruling (Docket # 44)       Page 2

A. Order on Contempt proceedings signed May 21, 2008 (Docket # 48) was
included with Appellants Response to Motion to Dismiss Appeal dated
June 13, 2008

# ISSUES PRESENTED FOR REVIEW

1. Did Judge Harkin error in accepting a complaint which had not been filed by the County Attorney's office, in claiming a violation had been committed pursuant to the Administrative rules of Montana, Title 36 pertaining to the Codes in Title 85 of the Montana Water use Act?

2. When the complaint was filed by Gary E. Collins' new attorney on August 3, 2006, did Judge Harkin error by not disqualifying himself after presiding over the easement case in cause # DV-96-83089? (Docket # 1-4)

3. When both Collins and Swingers have decreed water rights on Hayes Creek, did Judge Harkin error in signing a Temporary Restraining Order August 30, 2006 forbidding Swingers to irrigate so Collins could divert all the water? (Docket # 5)

4. Due to the fact Swingers were unaware of the Order until the summons was served on them September 11th to appear at a show cause hearing the following day, did Judge Harkin error in having Collins' attorney draft the order "Pendente Lite", signed September 15th, wherein Collins did not have to measure the water going into his ditch, but allowed to slightly overflow his cistern and use 14 sprinkler heads 24 hours a day, seven days a week? (Docket # 10, # 3, page 2)

5. Did the court further error in reserving decision whether Swingers could pump water from below the diversion used by Collins? (# 5, page 3)

6. The Swingers obeyed the restraining order, and informed the court they would have a well drilled to supplement their irrigation needs. After the well was drilled July 11, 2007 (Exhibit 13), which Collins was unsuccessful in stopping, but filed further documents July 25th with an application for contempt and writ of assistance, and Swingers filed their response with a brief and exhibits proving they had not used Hayes Creek water in 2007 as charged, did Judge Harkin error in ignoring that evidence?

7. Swingers Motion to Dismiss was filed September 14, 2007 as docket # 26. Did Judge Harkin error in ordering a hearing Sept. 24th as # 27, after which he denied Swinger's Motion to dismiss October 22, 2007 as # 29?

8. Did Judge Harkin error in taking judicial notice of his orders in Case DV-96-83089, and allowing that order as evidence, after reviewing the Motion for Summary Judgement, wherein Swingers had submitted evidence they had not committed contempt? (Tr. P 5, L 22 - pg 6, L 19)

9. Since Judge Harkin had to install a measuring device for the ditch serving his water right (Exhibit # 1), did he then error in not ordering Collins to install a measuring device at his diversion, but allowed him to divert enough water through two other properties and two road culverts and continue in a ditch to overflow his cistern? (Tr. P 6, L 22)

10. In lieu of the fact Judge Harkin had a separate water right for stock at 30 gallons a day per animal, did he error in not Confirming that Collins had a water right for his three horses? (Tr. P 9. L 21-25 & P 10, L 1)

1

11. Did the Court error in believing a Wornath-McMahon ditch continued past Collins' cistern? (Tr. P 10, L 19-21)

12. Did the Court error in accepting testimony about the changes to Collins' system? (Tr. P 11, L 10-20)

13. In presenting the Amended Findings of Fact and informing Judge Harkin that Collins listed the same 13 Photos taken August 3, 2006, did he then error by accepting them into evidence of contempt in 2007? (Tr. P 16, L 19 - P 18, L 16)

14. In lieu of the fact Exhibit # 1 proves the water right on Douglas Harkin's well of 15 GPM included irrigation, while he filed for additional irrigation and stock water, did Judge Harkin error in expecting Marie Swinger to agree that the well they drilled capable of 25 GPM was a replacement for their decreed water right of 96 GPM? (Tr. P 22, L 16-25)

15. Did Judge Harkin error in not addressing the fact Collins had given Blastics permission to pump water from Hayes Creek, when they only have a provisional right to irrigate? (Tr. P 27, L 18-23)

16. Did the Court also error in not addressing the fact Reneau's use Collins ditch to water their horses, and they do not have a water right? (pg 27)

17. Did Judge Harkin error in accepting Collins testimony that he could hear Swinger's pump from neighbors property across Hayes Creek - some 20 feet away, and that the creek was dry below Swingers intake dam as credible in the Tr. P 29 L 12-25 to P 31, L 1 & P 41, L 18 & P 43, L 25, and the Order received May 27, 2008 as Docket # 48?

18. When Marie Swinger requested the court to take judicial notice of the 22 exhibits entered with their Motion for Summary Judgement, did Judge Harkin error in denying to do so, as stated in the minutes of that hearing filed as Document # 44? (page 2)

19. After being advised of Keith Swinger's Alzheimers, and fact he had not been sworn in to testify, did Judge Harkin error in questioning him, and further suggesting he was capable of wiring? (Tr. P 62, L 15 -P 66 L 23)

20. Did Judge Harkin error in proposing that the Swingers install an electric pump override switch outside of their property, and directing Counsel for Collins to prepare the order? (Tr. P 67 L 14 - P 68 L 22)

21. Did the court error in granting a writ of assistance from the sheriff's office at the hearing? (Tr. P 70, L 3-8, and order # 8, page 4)

22. Did the Court error in the assertion # 4 stating that Collins testimony was direct, consistent and credible in stating he saw Swingers divert from Hayes Creek, that he heard their electric pump operating many days, depriving him of the water available for his superior water right on page 2, lines 14 through 22 of his order? (Document # 48)

23. Did the Court error in stating there was much more than a preponderance of evidence that Swingers took water in defiance of

2

Collins' superior water right, and was proof of Swingers civil contempt of the Court orders on page 2, lines 22 through line 24?

24. Did Judge Harkin error stating Swingers could no longer take their decreed water from Hayes Creek by means of a pipe and electric pump, and ordering them to have a power pole installed, with an master switch installed in a tamper proof box on Swingers property at a location selected by Collins as stated on Page 3, lines 15 - 19?

25. Since the water right gained by Douglas Harkin for 27 GPM stated the amount of appropriation of each party is to be computed on the stream at, or near, the point of diversion of each ditch (Exhibit # 1, page 2), did Judge Harkin knowingly error in not ordering Collins to install a measuring devise where he diverts water on page 3, lines 20 -21?

26. Did Judge Harkin then error in stating the Swingers are not to operate their electric pump diversion (only capable of either watering their lawn and garden, or operating nine sprinkler heads at one time) as are restricted from doing so as ordered on page 3, lines 22 - 24?

27. After allowing Collins to divert all available water from Hayes Creek on line 21, did Judge Harkin further error in stating Swingers are to have no other means of diversion from Hayes Creek than the pump and pipe on Page 3, line 28 and page 4, line 1?

28. Did Judge Harkin further error in forbidding any diversion for flood irrigating, or creating a pond to store water by any other means of utilizing Swinger's decreed water right without further order of the court on page 4, lines 1-3?

29. Did Judge Harkin error in granting Collins permission to break the lock with bolt cutters, or any other means, to gain access to the switch and disable Swingers electric pump and diversion from Hayes Creek on page 4, lines 8-10?

30. In Actually giving Collins license to destroy private property, did Judge Harkin commit his biggest error in granting a writ of assistance enabling Collins to do so, and preventing Swingers from defending their property in # 8, page 4?

31. After the Swingers filed their Notice of Appeal, and ordered the transcript June 2, 2008 as docket # 49 and 50, did Judge Harkin further error in issuing an order relating to the Motion for Summary Judgement filed April 29, 2008, after assuming Swingers had committed contempt?

32. Did the court conspire with Collin's attorney in requesting Swingers to voluntarily withdraw their Appeal, and further filing the Motion to Dismiss to which Swingers responded to June 13, 2008 - with a copy of the Order of May 27, 2008?

33. Does the Supreme Court have the authority to sanction Judge Harkin for not adhering to the facts and the law, for accepting accusations as surrogate for facts in presumption of guilt in his opinionated judgement; or does he have impunity?

## STATEMENT OF THE CASE

### Background

In order to present the facts which have led to this appeal, all of the players involved must be considered. The adjudication of Montana waters began in 1973, following the Water Use Act passed in 1972. KEITH R. and MARIE E. SWINGER were among the first to file their purchased rights as proven by the number W 000101 assigned. Agnes Breuer filed the water right W 118461 on March 8, 1982, which was for flood irrigation based on the predecessor Wm. Boss. Following a divorce and remarriage, John Breuer and Agnes Breuer Chamberlain sold the ten acres to Gary and Marjorie Collins January 14, 1983. Following their divorce and his remarriage to Pam, the water right is now claimed by GARY E. COLLINS.

In 1983 DAVID L. PENGELLY was the Supervisor of the Missoula Department of Natural Resources, and while employed there he attended law school. The Judge in this case DOUGLAS G. HARKIN had received a water right on his well for 15 GPM to serve domestic, irrigation and stock water on five acres August 17, 1978. He then further gained 76H-149969 for irrigation of 27 GPM from Mill Creek (near Lolo, Mt) to be measured at the ditch that diverted the water; while also obtaining 76H-149970 for stock water of 30 gallons per day per animal unit - both of which were based on a decree of June 1, 1886. To prove this fact, the Swingers enter these three water rights as Exhibit # 1. Of course David Pengelly had approved these rights while ignoring Swinger's purchased water right in favor of Collins by inserting "Warnath-McMahon ditch" where the old road bed was apparent in the 1937 aerial photo, and inserting "Hayes a/k/a Buckhouse" on the survey map of 1955.

4

Thus Gary Collins retained David Pengelly to represent him at the water hearings, even though Montana Statutes stated an attorney was not necessary. It would be considered hearsay to state why Water Master Ed Dobson was demoted and the Chief Water Judge C. Bruce Loble took his place at the hearing held July 17, 1998 which Swingers did not attend due to a death in their family. Therein, their exhibits were sealed and Collins was granted an 1881 priority on the wrong source of water. (The decree determining Henry Buckhouse and Heinrich Dunschen rights of farming and ranching superior to those of William E. Bass and Edward Hayes was on Buckhouse Creek located in Section 2, while Hayes Creek is in Section 10. Bass had a land grant in the Bitterroot, but supplied the portable mill to cut the logs provided by Hayes, with the site "Hayes" clearly inserted on maps; but most evident was the fact that Edward Hayes had a homestead claim in Section 2, while his second grant in Section 10 was not received until 1888 – the year following his drowning and three years after the decree in case 575.

Bare in mind that when the easement case was filed, Gary Collins was represented by Phillip O'Connel, whom conferred with Attorney David Pengelly, as proven in the Affidavits of Attorney fees submitted. Judge Ed McLean had been assigned to hear the case, but a Motion for substitution to Judge Harkin was filed, and he accepted. Of course Douglas Harkin was grateful for the water rights obtained, and David Pengelly immediately took over as Counsel for Collins, and it became "pay back" time!!

In both the Water Right Appeal and the Easement Appeal the Swingers entered the following proof of their purchase:

> Edward Hayes Land Claim in Section 2 filed April 16, 1870
> Decree in case 575 was to water over 100 inches which was
> given to Buckhouse and Dunschen over William **Bass** (whom only
> supplied the portable sawmill for the logging of Edward <u>Hayes</u>

5

Weekly Missoulian article of June 17, 1887 reporting Hayes drowning

Edward Hayes land grant in Section 10 dated January 14, 1888

George Bennett purchase of Hayes grant in Section 10 May 13, 1926

George Bennett Water right to 100 miner inches on Hayes Creek dated
    July 15, 1926

George Bennett deed to Albert Bakke dated June 22, 1945, including the
    water right, less all ditches and canals

Albert Bakke sale of only 33, 4 acres to Harvey Goff dated July 27,
    1948 without conveying any portion of the water right.

Albert Bakke sale of tract of land to Julian Reed dated November 8, 1949
    without conveying the water right.

Albert Bakke sale of four tracts of land to Julian Reed March 9, 1956
    wherein the water right was transferred.

Julian Reed sale of 10 acres and the foreman's house to his widowed
    sister-in-law Gertrude Malone March 15, 1956, without conveying
    any water right (north of Hayes Creek now owned by Blastics)

Julian Read Contract for Deed to Keith and Marie Swinger dated
    September 15, 1958, which contained the new home with the water
    rights, 1,200 feet of irrigation pipe and some farm machinery.

(Julian Reed sold that contract to W. E. Wirth, so the deed to Swingers
    dated May 22, 1963 is from him.)

                    MEANWHILE:

Gust Wornath purchased land from Buckhouse heirs in Section 2
    October 27, 1948
Harvey Goff sold Richard McMahon 30 acres June 5, 1954 in Sect. 10
Richard McMahon sold only 10 acres to John and Agnes Breuer
Agnes Breuer filed a water right March 8, 1982
Breuers sold to Gary and Marjorie Collins January 14, 1983

There was no way for a ditch from Hayes Creek to reach the Wornath

property in Section 2, by means of a "Warnath-McMahon ditch. These are

proven facts that cannot be disputed and contradicted by any water resource

survey!   But the Supreme Court affirmed the Water Court's decision and

Swinger's  were sanctioned "for wasting the court's time" in *Swinger v.*

*Collins* 1999 MT 202, 295 Mont. 447, 984 P.2d 151.

In the easement case filed as DV-96-83089, Judge Harkin simply concluded that since Collins had a water right, he had to have access to the source and an easement by implication was placed on Swingers property. Therein Swingers were ordered to install a 36 inch gate to give him entry on their private property. That order was also appealed as case No. 01-157 with the decision not to be cited, but filed with the Clerk of the Supreme Court as a noncitable document reported by case title *Swinger v Collins* 2001 MT 265 N. The Supreme Court eliminated issues adjudicated in the Water Court while embracing the doctrine of *res judicata*, and therein refused to review the water rights issue anew. The Justices affirmed the District Court Order and remanded it back for a determination of costs and attorney fees.

Therefore in clarifying the following issues the Supreme Court raised:

1. Apparently, In approximately 1993 Swingers removed a gate, impeding Collins access to and control of the diversion point.

2. Swinger's letter of June 11, 1994 stated they never argued the fact there was an easement on their property.

3. In May 1996 Swingers notified Collins they were denying him further access to the diversion point and Collins has been unable to control the water flow to his property.

(1) When Swingers first fenced their property they installed gates both on the north and south sides - where they also built a bridge across the creek, so that neighbor children could cross their property and go down their driveway to the only school bus stop at "Swinger's Lane". In 1992, before having the fence replaced, Swinger's purchased an 8 inch closeable culvert which was installed at the diversion. The August 13, 1992 bill of $50.00 for this culvert is entered as **Exhibit # 2**. The flow rate sheet to measure water obtained is entered as **Exhibit # 3**. (2) In allowing Collins to adjust the flow, of course in 1994 Swingers did not deny that he had access to divert the water. Swingers were neighborly, and certainly had no use for 100 miner

7

inches of water!! Therefore Swingers enter **Exhibit # 4** with 1994 photos showing Blastic's pump in the creek below Swinger's pump and also one in the ditch used by Collins, while the water diverted to Collins property was flooding the highway. (3) But upon Collins own admission, in # 6, page 3 of findings of fact, he stated he simply climbed the fence or threw rocks in the creek - which was the reason for the letter of May 7, 1996. As a result of his actions the sand and gravel washed down the creek, filling Swingers pond and killing the fish. On October 14, 1996 Swingers hired Al Gleason to remove this material, and the photographs of him doing so are entered as **Exhibits 5a and 5b**. At $840.00 this was very costly as proven by the bill which is entered as **Exhibit # 6.**

The easement case continued and the order prepared by Attorney Pengelly was signed December 12, 2000 as docket # 158 in that case and we now include as **Exhibit # 7**. In confirming that order and remanding it back to the district Court to determine damages and attorney fees, Gary Collins neither presented any evidence of damages suffered, nor proof of payment to his attorneys. Both Attorney Phillip O'Connell and David Pengelly merely presented affidavits of their fees beginning May 22, 1996, and a hearing was held September 11, 2001 granting them, which is entered as **Exhibit # 8**. The total Judgement of December 2001 amounted to damages and legal fees amounting to $28,023.51, which the Swingers paid in total in January 2002. During that time Swingers also had attorney fees and costs exceeding $10,000.00. They had not only lost their purchased water right, but had a non-existent easement placed on their property as a deprivation of their civil rights guaranteed in the constitution; while the amount of judgement totaled more than the original cost of their property in 1958, wherein they were forced to pay for their property twice. That was worse than the people whom

8

over-extended themselves in obtaining sub-prime mortgages and now cannot afford the payment on their homes. After the Supreme Court refused to renew the water rights issue, both time and money prevented further appeals. But Swingers were still able to utilize their "junior water right", while David Pengelly fell to his death in a climbing accident June 13, 2003.

Meanwhile, with Collins obtaining both a water right and an easement with little effort, and no cost, he felt he was the master in controlling Hayes Creek. Therein we jump forward to 2006, following the low snow pack during the winter. After attempting to start our pump in May, the repair man found that the electrical connections had been pulled apart and disconnected May 6th; after which we found something erosive had been poured down the pipe, which fed the line to our yard and field below, with debris washed down the creek to Collins diversion; and photographs proving such are entered as **Exhibit # 9**. To add insult to injury on August 8, 2006 <u>DOUGLAS DONALD HARRIS</u> filed several documents before Judge Harken in Cause DV-06-724. (See Footnote [1])

The filings included a signed order for a show cause hearing to be held September 12, 2006, but none of them were mailed to Swingers, and they were completely unaware they had been filed until they were included with the summons served September 11, 2006. One of the documents was the Affidavit of Gary E. Collins with 13 pictures taken August 3, 2006 in asserting Swingers

[1] In explanation of this new "player", Douglas Harris had taken over representation of the Missoula Area Square and Round Dance Association (MARSDA) suit when the county attempted to take the building the dancers had built on fair grounds property without paying for it in 1992. He refused to go over trial preparations, in suggesting Swingers relax over Labor Day, while advising Keith to wear a suit and tie to better represent his position as the president of that corporation, while both he and the County Attorney arrived in western shirts and cowboy boots. The ploy was exposed to Judge Hansen and Harris was reprimanded. There is nothing worse than a vengeful attorney and, in learning results of previous cases decided against Swingers, greedily accepted counsel for Gary Collins.

had taken all the water available in Hayes Creek. This is Court docket # 3, but also entered as **Exhibit # 10**. With only one day to prepare, Swingers were obviously not expected to attend this hearing as Collins and his attorney were seated at the defendants table. Even more concerning was the fact that Judge Harkin had the entire file in the easement case DV 96 83089 brought in, when we felt he should have disqualified himself. Nevertheless he ordered that the temporary restraining order remain, and Swingers discontinued further irrigation from Hayes Creek, and thus informed the court they would have a well drilled for use when the creek got low.

Swingers did not irrigate after September 15, 2006 and had drained their system, but in May 2007 they found someone had obviously turned their pump on during the winter as it was cracked from freezing. The motor was burned out of course, and the $480.00 receipt for a new pump and motor dated May 17, 2007 is entered as **Exhibit # 11**. The bill from B & D Pump service for $75.00 it entered as **Exhibit # 12**, (with the telephone estimate given for a pump necessary for the well which was added later at the left.)

That winter there was even less snowpack, and well drillers were busy, either drilling deeper wells - or for new construction - until Jerome Drilling called to state they could fit us in July 11, 2007 before drilling one for the former Justice of the Peace whom owns property north of Collins. The bill of Jerome Drilling is included as **Exhibit # 13**.

Since Swingers had been forbidden to utilize their Hayes Creek Water right after September 15, 2006, by the time the well was drilled, their lawns, garden and fields had become very dry from lack of water. But even though Collins had witnessed the well drilling, and reported it to the Conservation District in attempt to have them order it stopped, Swingers were quite surprised to find the Attorney for Collins file complaints on July 25, 2007, as

dockets # 11, 12, 13, 14 and 15 - with one being for contempt. Most bewildering was the application for contempt, which Swingers attempted to have explained in several documents they filed, but with NO justification given by either the Court or Attorney Harris. The hearing set by Judge Harkin was on the Contempt charges only, as ordered in docket # 27, 33 & 35; which had to be re-scheduled due to Keith Swinger having Doctor appointments and tests which led to being diagnosed with dementia leading to Alzheimers. Keith had tried very hard to forget the events that had occurred and, in doing so, unfortunately lost memory of other dates and events! (See Footnote [2])

Next Swingers enter photographs showing the enormous bags filled with sand and gravel which Collins placed in Hayes Creek by July 22, 2007, as well as one taken October 11th where he merely opened them and allowed the contents to flow down the creek, to fill Swingers pond as **Exhibit # 14**.

But since both sides were ordered to submit their Issues of Fact, Conclusions of Law and Order to Judge Harkin's secretary, Swingers now enter Collins list of Witnesses and Exhibits - which includes the 13 photographs taken on August 3rd the year before - as **Exhibit # 15.** Next they enter the Issues of Fact, Conclusions of Law and Order compiled by Attorney Harris on November 1, 2007 as **Exhibit # 16** - where the facts were fabricated and there are no citations to prior cases in the conclusion because he thoroughly expected the order to simply be signed.

Swingers did not dare attend the hearing without counsel, and retained Douglas Skjelset to represent them. The file copy of his Proposed Issues of

[2] Keith's loss of memory was apparent to relatives, friends and even repairmen that had to replace chain saw blades, or start mowers he had forgotten how to do. But when Marie was asked how she managed she would state, "Keith still remembers that he loves me, even if he has forgotten why".

Fact and Conclusions of Law (without an order, as signed by Skjelset) was picked up April 17, 2008 after he had left for the day - with a note on the bottom to be filed 4/18/08, is attached as **Exhibit # 17**. In # 5 of his facts he actually stated that Swingers had defied the court order in the summer of 2007, and was the final blow in our notice of dismissing him filed April 29, 2008. The Amended Issues of Fact, Conclusions of Law and Order Swingers submitted to Harkin's secretary are entered as **Exhibit # 18**. Swingers also filed a Motion for Summary Judgement on the Pleadings which they enter as **Exhibit # 19**, with a Brief containing 22 exhibits proving they had not committed contempt in disobeying the temporary restraining order which they enter as **Exhibit # 20**. (See Footnote [3])

In reference to the order signed May 21, 2008 which was entered as Exhibit A in Swinger's response to the Motion to Dismiss filed by Collins, they now enter the minutes of that May 5th hearing as **Exhibit # 21**.

---

[3]    This is the Motion that Judge Harkin stated was briefed in the order dated June 4, 2008, following the May 5th hearing covering the issue of contempt. After being in business in Missoula for over 25 years without having a single complaint filed against them, nor the necessity to file any liens for unpaid merchandise supplied, the Swingers contend this case is but one example of the numerous abuses of authority reported. But Swingers must appeal to the justices of the Supreme Court to determine if this is proper protocol in District Court proceedings!

12

FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW

I. Despite the fact that 85-2-116 MCA of The Water Use Act provided that legal assistance must be preformed by the County Attorney's office, and not by an attorney representing a landowner in filing a complaint, there was no clear and supporting evidence submitted by Collins. (Doc. 1-4)

  A. Photos entered with Collins' Affidavit do not constitute evidence that a violation has been committed. (Docket # 3)

  B. Judge Harkin erred in accepting the complaints filed August 3, 2006 and signing the Temporary Restraining Order August 3, 2006.(D. # 5)

  C. This became apparent in his surprise that Collins had not filed the well drilling complaint on page 33, line 12 to page 34 of the transcript.

II. The findings of fact of the District Court are clearly erroneous within the meaning of Rule 5 (a) M.R.Civ.P. (Order, page 2, lines 11-13 of docket # 48)

  A. Collins did not object to Swingers water right until June 3, 1993. He then subdivided his property in 1994, with his home and outbuildings on 3.23 acres, and his field containing 6.77 acres. He lost his agricultural status in the subsequent 1997 appraisal, while on page 9, lines 16-20, Collins admitted irrigating 7 acres of grass pasture - but used to have alfalfa, before obtaining damages for lost hay, which he stated was 10 tons of hay per year on page 10, line 4.

  B. The measurement of water states 100 miner inches is equivalent to 18.7 gallons per second pursuant to 85-2-103 (2) MCA. Gary Collins has only a 120 GPM water right for irrigation only. (his exhibit # 1)

  C. Waste of water means unreasonable loss through the design or negligent operation of the distribution pursuant to 85-2-102 (pg. 17); while Collins stated his dirt cistern holds 2,500 gallons of water, and is 6' deep and 12' wide on page 10, lines 16-17.

  D. Decreed water shall be measured according to the law in force at the time the decree was made, pursuant to 85-2-103 (3) MCA, yet Collins has absolutely no measuring device in the ditch from Hayes Creek on Swinger's property.

  E. Prevention of water waste is covered in 85-2-114 MCA, while Collins admitted using a 5 HP pump on page 11, line 1 to operate 14 sprinkler heads, but could pump the cistern dry in 10-15 minutes on page 15, lines 13-24, which takes 4 - 5 hours to fill back up on page 19, lines 23-25.

13

F. If Collins raised hay he had to file a Schedule F from 1983 through the period he claimed damages for this loss, but Collins then claimed $2,317.00 for lost hay production and wasted fertilizer and weed control on page 3 of Exhibit B entered with that appeal in case 01-157 (2001).

G. Then Collins stated Swingers could not operate their system legally (without using Hayes Creek) because they could only pump 25 GPM out of their well on page 22, lines 3-6.

III. The Court misdirected the nature of the evidence. (Order, pages 2-4)

A. Direct evidence is that which proves a fact without any inference or presumption and which in itself, if true, establishes the fact pursuant to 26-1-102 (5) MCA. Circumstantial evidence cannot be based on testimony, especially when the witness has an interest in the outcome.

B. 26-3-301 (2) MCA states all presumptions are disputable and may be controverted by a preponderance of evidence contrary to the presumption.

C. 26-3-401 MCA states relevant evidence has the tendency to make the existence of any fact that is of consequence to the determination of action more probable than without the evidence.

D. 26-3-402 MCA states all relevant evidence is admissible, but the 22 exhibits Swingers entered at the hearing are not listed by the Court Reporter in the transcript.

E. The Court did not question where the Wornath-McMahon ditch ends that supposedly runs past Collins diversion on page 10, lines 19-20.

F. Rather than accepting the evidence, the Judge interrupted with questioning inserted or his own thoughts and suggestions as proven in the Transcript on pages 22 - 29 in stating, "you don't need the creek. You got a well. That's really wonderful!" on page 24, lines 9-11; while Swinger's Exhibit # 1 proves that Douglas Harkin also had a well, but applied for both irrigation and stock water rights on Mill Creek.

G. Then in Voir Dire beginning on page 39 he questioned Gary Collins about how Swinger's irrigation system works, stating he knew how Collins' system worked on lines 15-16; while he then actually suggested how to respond which continued on page 43.

H. He also felt he would help the Applicant/Plaintiff by asking what the photo was in the exhibit on Page 58, line 22 through page 59, line 15, where he assumed the photo of Blastic's pump in the creek was actually Swingers.

I. In order to prove contempt in the case now being appealed, Collins had to submit substantial credible evidence that Swingers pumped

14

water from Hayes Creek after September 2006, as stated in the application filed July 25, 2007. (as asserted several times in the transcript and entered in docket # 13)

J.  The Court was aware that Collins attempted to stop the well drilling on July 11, 2007, and that it was used in July and August of 2007.

K.  Simply accepting Collins testimony of hearing Swinger's pump running several times and that Hayes Creek was dry below, as asserted several times according to the transcript, was a manifest abuse of discretion by the Court.

L.  A party has the burden of persuasion as to the existence of each fact essential to the claim for relief asserted pursuant to 26-1-402 MCA in order for a Writ of Assistance to be granted.

M.  Refusing to take judicial notice of the exhibits included with Swinger's Motion for a Summary Judgement filed April 29, 2008 was an act of bias and opinionated judgement by the court.

IV.  In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and the judgement entered pursuant to Rule 58 M.R.Civ.P.

A.  Collins is bound by his own evidence, and cannot use photographs taken August 3, 2006 to prove Swingers committed contempt of the court order in July and August 2007.

B.  Collins' burden of proof depends on credible evidence, and cannot wait until a dry year and rely on orders in the easement case DV-96-83089 in again expecting damages and attorney fees.

V.  There was no clear and supporting statutes that enabled the Court to order Swingers to allow Collins control of their property.  (Order, docket 48)

A.  The Court ordered a locked switch box installed on a power pole on a location chosen by Collins that he could control. (# 6, page 3)

B.  The Court stated if Collins could not unlock the box, he was to use bolt cutters to do so, and further allowed him to disable Swinger's pump. (# 8, page 4)

C.  Giving Collins the right to enter private property, and destroy equipment belonging to Swingers is a violation of the protection of property ownership guaranteed in the U. S. Constitution.

D.  Providing Collins with a Writ of Assistance by the Sheriff's department is an invasion of privacy which denies the peaceful enjoyment every property owner is entitled to. (# 8, page 4)

15

E. Swingers have been wrongfully enjoined from utilizing their purchased water right (# 7, page 3) while attorney fees are to be awarded to the prevailing party pursuant to 85-2-125 MCA.

F. The Court reserved the complaint for damages and Award of attorney fees for later hearings in the transcript page 70, lines 9 - 13 and # 9, page 4 of the order.

VI. The District Court order lacks support. (Entire Docket # 48)

A. The owner is entitled to full and unfettered use of his property as provided in 70-1-101 and 70-1-301 MCA.

B. The bed of a stream is owned where it crosses property pursuant to 76-16-201 MCA.

C. Ditch easements by implication are covered in 70-17-112 MCA

D. Attorney fees of successfully prosecuting pursuant to 76-17-112 (5)

E. The Easement case DV-96-83089, which was upheld by the Supreme Court in case 01-157 only applied to the ditch on Swinger's property.

F. The Court lacked jurisdiction to allow Collins further intrusion on Swinger' property, by marching to the beat of his own drummer in issuing orders which denied Swingers the private and peaceful enjoyment of their property.

G. Judge Harkin was familiar with locked gates for the three persons obviously using Mill Creek as proven in the transcript on page 67, lines 14-17.

H. It became obvious that the outcome of each hearing was pre-determined by Judge Harkin, in collusion with Attorney Harris, by the very fact he had him write the orders as proven in the Transcript on page 70, lines 4-8.

I. Judge Harkin made his own decision based on accusations surrogate for fact - thereby presuming guilt, when evidence proved innocence.

J. The wrongful occupation of real property is deemed to be the value of the use of the property for the time of such occupation pursuant to 27-1-318 MCA.

K. A judgement or order in a civil action, except where expressly made final by the code, may be prescribed by the Rules of Appellate Procedure, and not otherwise, pursuant to 25-12-101 MCA.

16

## THE STANDARD OF REVIEW

The standard of review of a District Court's findings of fact is set forth in Rule 52 (a) M.R.Civ.P, which provides that in all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgement shall be entered pursuant to Rule 58. This consists of the following considerations:

1. The Supreme Court will review the record to see if the findings are supported by substantial evidence.

2. If the findings are supported by substantial evidence the Supreme Court will determine if the Trial Court misapprehended the effect of the evidence.

3. If substantial evidence exists and the effect of the evidence has not been misapprehended, the Supreme Court may still determine a finding clearly erroneous if a review of the record leaves the court with a definite and firm conviction that a mistake has been committed in former appeals in citing *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 202, 930 p.2d 37, 41; and whether the Trial Court interpreted the law correctly in citing *Carbon County v. Union Oil Reserve Oil Co.* (1995). 271 Mont. 459, 469, 898 P.2d 680, 686.

4. The findings of the District Court must be based on substantial evidence, and will be reversed if a clear preponderance of the evidence supports contradictory findings, in citing the cases *Boylan v. VanDyke* (1991), 247 Mont. 259, 264, 806 P.2d 1024: *Pare v. Morrison* (1990), 241 Mont. 218, 222, 786 P.2d 655, 657 and *Christensen v. Britton* (1989), 240 Mont. 393, 401-402, 784 P.2d 908, 913.

5. In the case *Butler v Germann*, 822 P.2d 1067, Mont. 1991, district court entered a permanent injunction and awarded "the property owners" damages against the defendants for interfering with a ditch easement because

they had a lease credit proving lost hay production. In this appeal the Supreme Court is obligated to ascertain if the hearings held and orders signed were based on the law, or due to animosity, prejudice and possibly retaliation in expecting further hearings on damages and attorney fees as a "final judgement".

# BRIEF SUMMARY

Swingers contend that In violation of their right of property ownership, their exhibits proving they had purchased the Hayes Creek water right September 15, 1958 were sealed by the Water Court Judge Loble. Their exhibits proved that the 1881 decree in case # 575 was on BUCKHOUSE CREEK. The exhibits also proved that Gust Wornath later purchased land from the Buckhouse heirs in Section 2 - But Collins was granted a superior water right in Section 10 based on that 1881 decree.

In the subsequent easement case in District Court Collins was granted an easement by implication - with conjecture being that since he had a water right, he had to have access to the source. Collins' only argument was that his predecessor, Harvey Goff, had purchased land from Bakke in 1948 which had originally been owned by George Bennett. But the previous deed from Bennett to Bakke dated June 22, 1945, which described the land conveyed, expressly stated, "together with all water rights thereto appertaining, **less** the right of way of the Northern Pacific Railway Company, the County of Missoula, and **all ditches, canals** and transmission lines."

In awarding Collins both a superior water right and an easement on Swingers property for a ditch, Swingers were also ordered to pay damages due to the fact Collins was unable to cut hay on the same few acres he pastured three horses, despite the fact he failed to prove that hay had ever been grown on that land; as well as his attorney fees - with the total judgement of $28,023.51 paid in January 2002 - after Swingers had also paid their own attorney fees.

But regardless of gaining both a non-existent water right and easement, Collins was still unable to grow hay, and because of former court orders, felt

he could again obtain damages from Swingers - and the attorney fees required to do so. Collins and his attorney Douglas Harris feel they have achieved the first step in having Judge Harkin find Swingers in contempt; but the court sanctions on contempt are usually a fine or time spent in jail, and certainly does not consist of orders giving Collins control of Swingers property - with a writ of assistance from the Sheriff's office. This is not justice, but a blatant act of retribution by a District Court Judge - whether out of envy or revenge - for which Judge Douglas Harkin should be publicly sanctioned by the Supreme Court.

As proof that this case should not have been heard in District Court, was the fact Collins could not file the complaint attempting to prevent the well being drilled on Swinger's property, but it was referred to the County Attorney's office - with the charge being drilling a well without a permit. Of course Collins testified of observing it being drilled, and despite the fact Swingers had submitted evidence that both Statutes 70-1-101 and 70-1-103, as well as 70-16- 301 proved that water below the ground belonged to the property owner, they were refused to be entered, and the jury ordered to abide by the Conservation rules established for navigable waters, with verdicts for both Keith and Marie - and each assessed the fine, plus jury costs.

In reviewing the adequacy of the findings of fact arrived at in this case the Supreme Court must examine whether they were comprehensive and pertinent to provide a basis for the decisions and whether they were supported by substantial evidence, citing *Marriage of Nikolaisen* (1993), 257 Mont. 1, 5, 847 P.2d 287, 289. The Supreme Court must also determine the riparian rights of land owners in caring for the stream and banks for flood protection on private property.

ARGUMENT

This argument is entered pursuant to Rule 23 (a) (4) M.R.App.P with citations to authority, procedural and evidentiary issues. It represents an ongoing dispute between the parties whom have been adjudicated water rights on the same source, and as such is similar to *Goodover v. Lindeys* (1992) 255 Mont. 430, 444, 843 P.2d 765 Mont. LEXIS 327; 49 Mont. St. Rep. 1059. cited in Exhibit # 17 and # 18 Conclusions of Law.

The Montana Water Use Act did not create a private right of action to enforce the civil penalties of the Act. Therefore a landowner cannot hire private counsel to file a civil complaint against another landowner, as reports of any violations of the Water Act or DNRC rules must be submitted to the County Attorney in citing *Faust v Utility Solutions,* 2007 MT 326, 340 Mont 183; 173 P.3d 1183.

Rule 54 (a) M. R. Civ. P states every final judgement should grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings. This relief considers: 1) the consistency within the statute, 2) the intent of the legislature, 3) the avoidance of an absurd result and 4) the agency charged with its administration.

Nevertheless, after initially filing a Motion to Dismiss September 14, 2007, the Swingers filed a Motion for Summary Judgement April 29, 2008, with their Brief entering 22 exhibits proving they had NOT committed contempt. These are docket # 41 and 42, and entered as their Exhibits # 19 & 20. Therein, they cited the following applicable cases:

*City Motor Co. Inc. v District court,* 166 Mont. 52, 54, 530 P.2d 486 (1975)
*Cereck V. Albertsons Inc.,* 195 Mont. 409, 411, 637 P.2d 509, 520 (1981)
*Downs v. Smyk,* 185 Mont. 16, 20, 604 P.2d 307, 310 (1980)
*Morton v. M.W.M. Inc.,* 263 Mont. 245, 249, 868 P.2d 576, 579 (1994)
*Fleming v. Fleming Farms Inc.,* 221 Mont. 237, 241, 717 P.2d 1103, 1105 (1986)
*Thorton v. Songstad,* 263. Mont. 390, 401 868 P.2d 636, 640 (1994)

21

The exhibits which were presented have provided evidence and the firm conviction that a mistake has been made by Judge Harkin in case DV-06-724 – both by ordering a Temporary Restraining Injunction August 3, 2006 and in the orders following the May 5, 2008 contempt hearing, in further citing *Wareing v. Schreckendgust*, 280 Mont. 196, 202, 930 P.2d 37, 41 (1996), and the Supreme Court must review the Court's conclusions of law in determining, 1) whether the Swingers committed contempt; and 2) if Judge Harkin's interpretation of sanctions for contempt was correct in citing *Carbon County v. Union Reserve Coal Co.*, 271 Mont. 459, 469, 898 P.2d 680, 686.

According to the Rules of Civil Procedure, the findings of the District Court must be based on substantial evidence, and must be reversed if a clear preponderance of the evidence supports contradictory findings. The Swingers contend the Courts' findings are clearly erroneous under the three part test enunciated in *Interstate Prod. Credit Ass'n. v DeSayes*, 250 Mont. 320, 323, 830 P.2d 1285, 1287, which included attorney fees when a party has acted in bad faith, vexatiously, wantonly and for oppressive reasons as Collins has. The Conclusions of Law in the Order signed by Judge Harkin December 12, 2002, state in # 1 on page 6, "Goff's acquired a ditch easement by implication across the parcel retained by Bakkes", and # 2 states Ditch easements acquired by implication are protected by 70-17-112 MCA. That conclusion directly contradicts the deed from George Bennett to Albert Bakke dated June 22, 1945 which included the water rights – while explicitly eliminating all ditches and canals. The findings of the District Court must be based on substantial evidence, and must be reversed if a clear preponderance of evidence supports contradictory findings in citing *Boylan v. Van Dyke, Butler V. Germoan and Christianson v. Britton.*

22

Also the court may award the attorney fees when a party is forced to hire counsel to defend a frivolous complaint in order to make the injured party whole in citing *Foy v. Anderson (1978)* 176 Mont 507, 511-12, 580 P.2d 114, 116-117 (referred to as "the Foy exception") in citing *Holmstrom Land Co. v. Hunter* (1979) 182 Mont. 43, 48-49, 595 P.2d 360, 363 and *Stickney v. State, County of Missoula (1981), 195 Mont. 415, 418, 636 P.2d 860, 862.*

Moreover, If the Court finds fraud practiced in the complaint, the party should pay the attorney fees necessary to defend in citing the U. S. Supreme Court case *Chambers v. Nasco Inc.* (1991), 111 St. Ct. 2123, 2133, 115 L.Ed. 2d 27, 45.

The statutes of the State of Montana do not legalize what the courts have ordered. The Swingers have presented unrefutable evidence of their ownership of the Hayes Creek water rights, and that Collins claim was actually based on the 1881 decree on Buckhouse Creek. But the Supreme Court affirmed the Water Court's decision; "based on large part due to Swingers failure to attend the Water Court Hearing", and actually imposed sanctions for filing a frivolous appeal. The Swingers do not consider having their property confiscated either trivial or foolish!

Then to have a non-existant easement placed on their land which ordered them to install a 36 inch gate to access private property was beyond their belief. By law ditch rights and water rights are separate and distinct. They can be acquired separately, as well as sold and transferred separately; but Gary Collins did not purchase or acquire either of them, but gained them by fraud and misrepresentation! His crowning achievement was in obtaining damages for lost hay crops, when that land had never produced hay; and also obtain attorney fees from 1996 through 2001 during the time the facts were being distorted.

23

## RELIEF SOUGHT

The Appellants herein request a re-opening and review of the water right decrees as provided pursuant to 85-2-237 MCA; for such reasons as listed in 85-2-237 (2) (b):

  (i) mistake, inadvertence, surprise or excusable neglect (in failing to attend only one - of many - hearings)

  (ii) newly discovered evidence, that by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b) M.R.Civ.P.

  (iii) fraud, misrepresentation or other misconduct of an adverse party

  (v) any other reason justifying relief from the operation of the judgement.

1. Code 26-1-205 states entries in official books constitute prima facie evidence, while code 26-1-1012 further states that publications may be entered into evidence as prima facie evidence if the source is obtained and identified.

2. Recorded property deeds and newspaper articles during the period a law suit is decreed can not be altered by a survey conducted years later - as was done by inserting "Warnath-McMahon ditch", where the old road bed was visible on a 1937 aerial photo -  nor by adding a/k/a Buckhouse to a 1955 map where Hayes Creek is noted.

3. Swingers have provided the property deeds from the time George Bennett obtained his land grant in 1912.  They have also provided the water right he filed to 100 miner inches of Hayes Creek water in 1926 after purchasing Edward Hayes second land grant of 1888 - which would have been impossible if it was also known as Buckhouse Creek where rights had been decreed in 1881.

24

4. Swingers further provided the deeds of ownership from Bennett to Albert Bakke; from Bakke to Julian Reed; and from Julian Reed to Swingers which included the Hayes Creek water right and 1,200 feet of irrigation pipe.

5. Proof of the chain in title from an established water right must be proven, while Collins only entered fact Harvey Goff purchased 33.4 acres of land from Albert Bakke - neither of whom were successors to the decree in case 575.

6. The water right filed by Agnes Breuer to flood irrigate was based on Wm. Boss - and there was no one involved in case 575 by that name.

But, Swinger's water right had been confiscated, with a non-existent easement placed as a consequence (while still being assessed property taxes on the land that Hayes Creek flows), both under the scrutiny of the Supreme Court. Not only has Collins' actions deprived Swingers of a vacation in over eight years, but the invasion of their property has prevented them from having the peaceful enjoyment of their home.

The Water rights should be re-adjudicated so that Swingers regain the property rights they have been deprived of. Gary Collins should be sanctioned for the fraud committed by both falsifying information in acquiring a water right and a non existent easement on Swingers property, wherein he was awarded both damages and attorney fees. This harassment has been aided by the Court, and must be stopped by awarding Swingers equal sanctions!

The Swingers feel they should be awarded the costs expended, which include the culvert, a new pump and service call, cost of removing debris, the cost of drilling a well and having pump installed, as well as their attorney fees, fines and costs - plus the amount determined as the use of their purchased water right for 25 years - from 1983 to 2008.

25

## JUDGEMENT ON FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

This appeal before the Supreme Court represents the third case by the Swingers versus Collins stemming from the adjudication of water rights; and as the saying goes, three strikes and you are out, while this court has become the referee in determining the final score.

Due to a death in the family Swingers failed to attend a hearing held by the Chief Water Judge in July of 1998 in Case No. 76HE-11. Therein the Montana Water Court sealed Swingers evidence and granted Collins' ownership of an irrigation right claim No. W 118461, with a diversion point from Hayes Creek on Swingers' property, having a priority date of June 19, 1881. This Court affirmed the Water Court, in large part due to the Swingers failure to attend the Water Court hearing, in re *Adjudication of Existing Water Rights (Swinger v Collins)*, 1999 MT 202, 295 Mont. 447, 984 P.2d 151.

With the water rights settled, the issue presented the District Court was whether Collins had a ditch easement across the Swingers property and, if so, whether the Swingers wrongfully interfered with that easement and caused Collins damages. Following a non-jury trial the District Court entered its Findings of Fact. Conclusions of Law and Order awarding Collins injunctive relief, damages and attorney fees, which was affirmed in the appeal.

The Swingers had raised many issues on the Water Court's final determination as to the ownership of Hayes Creek water rights, which this Court refused to review anew because the Swingers failed to support their contentions with citations to authority on the procedural and evidentiary issues.

Therein, pursuant to Section 1, paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the opinion stated that their decision shall not be cited as precedent, but filed as a public document with the Clerk of the

Supreme Court and reported by case title, Supreme Court cause number and the result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this court. In affirming the District Court, the case was remanded back for a determination of costs and attorney fees, with the amount Swingers ordered to pay being determined at $28,023.51.

Unfortunately, in that appeal, this court believed several facts presented by the District Court, such as:

1. The statement that Swingers impeded Collins by removing the gate on the north side of their property in 1992, so Collins had no access to the diversion; while Swingers have proven that a closeable culvert was installed at the diversion which Collins could adjust in obtaining water, at the time the gate was not replaced and the bridge that formerly existed was removed.

2. The statement that Swingers agreed Collins had an easement in their letter dated June 11, 1994 due to the fact they had allowed McMahon, Breuer and Collins to divert water; while Swingers have proven this was a neighborly gesture in also allowing the Blastics - whom only have a provisional water right - to also pump water from Hayes Creek.

3. The statement that in May 1996 Swingers wrote Collins a letter denying him access to their property; while Swingers have entered evidence proving that the sandbags placed in the creek in diverting were merely cut open and allowed to wash down the creek filling Swingers pond below, which killed the fish; and the cost of removing such in October 1996 amounted to $840.00.

It appears that the Swingers had gone overboard in sharing the water of Hayes Creek, which has been very costly to them. Therefore, the complaints filed by Collins new Attorney Douglas Harris in August of 2006, and the subsequent hearings and orders deserves special attention in Case DV-06-724.

The Supreme Court tends to uphold decisions made in lower courts, but this appeal has convinced the Justices that trial Court is capable of impunity in signing orders that are above the law, which appears to be some sort of vendetta against the defendants. In this appeal Swingers have cited the authority on procedural and evidentiary issues pursuant to Rule 23 (a) (4) M.R.App. P. which must now be considered. This court cannot possibly affirm

27

the facts presented, with the conclusions of law in the order dated May 27, 2008; in the realization that would multiply the injustices suffered by the defendants.

This appeal of the order on contempt includes ancillary orders which effect the substantial rights of the property ownership of the Swingers, which cannot be allowed. Pursuant to Rule 6 (3) (j) M.R.App.P., the Swingers are entitled to pursue the inquiry to determine whether the allocation of water to Collins to operate 14 sprinkler heads 24/7 with water diverted sufficient to fill his cistern to slight overflow as ordered on Page 2, lines 11 - 13 is in accordance with existing law as outlined in 85-2-102 (17) and 85-2-103 (2) and 85-2-103 (3).

Concerning relations between the parties, It is this Court's equitable power to research a lower courts' inherent power to police itself, thus serving the dual purpose of vindicating judicial authority with resort to sanctions available and making the party whole for property wrongly awarded to others.

Because the Court has now been convinced that errors may have been made in affirming former appeals, it hereby grants the Swingers request to re-open and review the water right decrees as provided in 85-2-237 MCA for the reasons listed in 85-2-237 (2) (b)

   (i) mistake, inadvertence, surprise or excusable neglect (in failing to attend only one - of many - hearings)

   (ii) newly discovered evidence, that by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b) M.R.Civ.P. (Not realizing their exhibits would be sealed)

   (iii) fraud, misrepresentation or other misconduct of an adverse party (by altering exhibits and making false statements)

   (v) any other reason justifying relief from the operation of the judgement. (to return property to rightful owners)

28

In reviewing the exhibits listed by the Swingers, they have obtained the Water right filed on Hayes Creek by George Bennett July 15, 1926 - which would have been impossible if those rights had been decreed. Their exhibits also include the deed from Bennett to Albert and Anna Bakke June 22, 1945 where all ditches and canals were eliminated. The deeds also ascertain that Bakke's sold Julian and Alma Read a tract of land November 8, 1949, after which Julian and Alma Read purchased 4 tracks of land from Albert and Anna Bakke in Sections 10 and 15 March 9, 1956 which had to include the water right because the Contract for Deed from Reads to Swingers dated September 15, 1958 included "1,200 feet of irrigation pipe <u>with the water rights on Hayes Creek"</u>.

The fact that no ditch rights were included in the sale from Bennett to Bakke, appear to make Collins claim that an easement arose when Albert Bakke sold 33.4 acres to Harvey Goff on January 29, 1948 invalid. Furthermore, the initial water right filed by Agnes Breuer March 8, 1982 to flood irrigate was based on being derived from Wm Boss, and in changing this to sprinkler irrigation based on decree # 575 of 1881, Collins must prove how he became a successor to the water rights established in that decree.

This can not be ascertained by simply inserting "Warnath-McMahon ditch" on a 1937 aerial photo, because neither party had water rights, nor can it be proven by adding a/k/a Buckhouse to a 1955 map showing Hayes Creek. Failure of Collins to present conclusive evidence of possessing a water right with the easement necessary, will result in having both the Water Court adjudication and the easement issue in District Court overturned.

SIGNED this _____ day of _____, 2008.

29

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 11 of the Montana Rules of Appellate Procedure I hereby certify that the Appellants Brief was printed on 8 1/2" X 11" standard quality, white, unglazed, acid free, recycled paper of 25% cotton fiber content, with a minimum of 50% recycled content, of which 10% is post-consumer waste.

I further certify that the brief is printed with a proportionately spaced typeface of 14 points or more, in a non-script text with case names and headings either underlined, in bold or italics; that it has margins of one inch on the top, bottom and both left and right sides; and is double spaced with the exception of Issues, footnotes and quoted or indented material. The principle brief does not exceed 10,000 words, and the nine copies were duplicated by a commercial photocopy method capable of producing a clear black image.

Dated this _7th_ day of _July_, 2008.

_Marie E. Swinger_
Marie E. Swinger


# CERTIFICATE OF SERVICE

I hereby certify that on _July 7_, 2008 a true and correct copy of the Appeal Brief was placed in the U. S. Mail, postage prepaid, and addressed to the Attorney for Gary E.Collins at:

Douglas D. Harris
P. O. Box 7939
Missoula, MT 59807-7939

_Marie E. Swinger_
Marie E. Swinger