JUSTICE COTTER,
concurring.
¶36 I concur in the decision of the Court upholding the defendant’s convictions. I write separately to set forth the basis for my concurrence.
¶37 As the Court observes, we recently issued an opinion in State v. Colburn, in which we reversed the defendant’s conviction on two grounds. We concluded the District Court abused its discretion in disqualifying Colburn’s expert witness from testifying at trial, and erred in its application of the Rape Shield law to exclude evidence that Colburn offered at trial. Colburn, ¶¶ 18,29. The evidence that Colburn sought to introduce at trial centered upon the fact that the victim, R.W., had been abused by her father who had been convicted of assault, and thus the source of her detailed knowledge concerning sexual activity (a centerpiece of the case against Colburn) came not from Colburn but from the abuse her father inflicted. Colburn, ¶ 20.
¶38 Similarly, in this case, the defendant alleged that victims A. A. and J.G. were victims of prior assaults by an individual who was convicted of assault. As the Court notes, the defendant attempted throughout the trial to present evidence that the prior assaults increased the chance that the allegations against Awbery were based upon the victims’ *343 PTSD, and/or that the PTSD diagnosed in some of the victims actually resulted from their prior assaults. Although Colburn and this case share the important unrefuted fact that the respective victims had been previously assaulted, I would conclude for the reasons set forth below that Colburn does not control here, and that the District Court did not abuse its discretion in excluding evidence of the previous assaults from the jury’s consideration.
¶39 In Colburn, the State introduced the testimony of nurse practitioner Hansen, who interviewed R.W. and testified that her statements were consistent with those of a child who had experienced sexual abuse. She stated a child would not have the detailed sexual knowledge R.W. possessed unless the child had been sexually abused. Colburn, ¶ 11. The State relied upon Hansen’s testimony to argue that R.W.’s sexual knowledge must have resulted from Colburn’s abuse. Colburn countered that the fact that R.W. had been assaulted by her father would establish that her sexual knowledge was gained from those assaults rather than from any assault by him. Thus, there was an immediate relevant straight-line connection between the lynchpin of the State’s case against Colburn (R.W.’s sexual knowledge) and the fact that R.W. had been previously assaulted by her father.
¶40 Connecting the dots in this case is far less certain and far more complicated. Awbery sought to offer an alternative explanation for the victims’ psychological symptoms, alleging that their PTSD and anxiety could have been the result of sexual, abuse by others and could also have caused them to fabricate allegations against him. There are evidentiary impediments to establishing this defense. First, it is not clear from the record how Awbery intended to introduce into evidence the prior incidents involving the victims so as to illuminate the cause of their psychological conditions, as he represented to the court that he did not intend to ask the victims any such questions. He said he would instead introduce the evidence “perhaps [through] family members, counselors, or Ms. Dutton.” He later advised the court during trial that he could introduce evidence of these other incidents through another named witness, counselor Feller, and/or a police officer. However, he never identified the witness through whom the evidence would be introduced, nor did he make an offer of proof in this regard. M. R. Evid. 103(2).
¶41 Second, even if Awbery had been allowed to introduce evidence of the prior assaults, the task remained for him to elicit testimony tying the victims’ PTSD and other psychological conditions to the prior assaults, and/or establishing that their PTSD led them to fabricate the evidence against him. The defendant called no expert witness to render *344 these conclusions, and the prospect of gaining such admissions on cross-examination of the state’s expert and the children’s therapists was dubious. As the State pointed out during argument in chambers, it was not the prior instances of alleged abuse that were speculative or unsupported; rather, it was the claimed defenses of fabrication and erroneous reporting (as well as the defense that the victims’ PTSD and other psychological conditions could have resulted from prior abuse) that were speculative and unsupported.
¶42 In denying Awbery’s request to introduce into evidence allegations of prior abuse, the District Court concluded that the proposed evidence would confuse and distract the jury and get the court into “time consuming sideshows.” The court reasoned that “we could go on weeks on weeks trying to determine what the PTSD in these children[,] given their lifestyle and given the things that have happened to them in the past, is.” The court further observed that the testimony of counselor Feller was specific to the symptoms she has observed in these victims and very specific to this defendant.
¶43 Regardless of whether a case involves the Rape Shield law or another statutory or common law evidentiary rule, it is axiomatic that the District Court has broad discretion to exclude potentially relevant evidence where its probative value is substantially outweighed by the danger of confusion of the issues, the misleading of the jury, or by considerations of waste of time. M. R. Evid. 403; State v. Passmore, 2010 MT 34, ¶ 64, 355 Mont. 187, 225 P.3d 1229. Given the protracted and confusing lengths to which the defendant would have to go to connect the prior assaults to the victims’ various psychological conditions and the lack of any clear path to get there, I conclude that the court did not abuse its discretion in excluding the subject evidence. I would therefore affirm.
JUSTICES BAKER and McKINNON join the concurrence.