FILED

06/27/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0777

DA 15-0777

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 155

STATE OF MONTANA,

Plaintiff and Appellee,

v.

SYLVIA R. LLAMAS,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC-14-108
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Chief Appellate Defender, Moses Okeyo, Assistant
Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Ryan W. Aikin, Assistant
Attorney General, Helena, Montana

Eileen Joyce, Silver Bow County Attorney, Ann M. Shea, Deputy County
Attorney, Butte, Montana

Submitted on Briefs: May 17, 2017

Decided: June 27, 2017

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Sylvia Llamas appeals from the District Court's memorandum and order filed August 3, 2015, denying her motion to dismiss the criminal charges against her for lack of a speedy trial. We affirm.

¶2 We restate the issues on appeal as follows:

> *Issue One: Did the District Court err in denying Llamas' motion to dismiss for failure to provide a speedy trial?*
>
> *Issue Two: Did Llamas receive ineffective assistance of counsel in regard to her motion to dismiss for failure to provide a speedy trial?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 16, 2014, police arrested Llamas at a casino in Butte, Montana. She attempted a robbery with a handgun and was being subdued by patrons when the police arrived. The State filed a complaint in Justice Court on May 19 charging Llamas with felony robbery and the Justice Court set bail at $25,000. The Justice Court did not conduct any other proceedings. In June 2014 the State sought and obtained leave to file an information charging Llamas with felony robbery in violation of § 45-5-401(1)(b), MCA; felony possession of dangerous drugs in violation of § 45-9-102, MCA; and use of a firearm in violation of § 46-18-221, MCA. Llamas moved to reduce her bail but, after a hearing, the District Court denied the motion.

¶4 Llamas appeared in District Court on the charges on July 10, 2014, and pled not guilty. The District Court set the omnibus hearing for August 14. On August 4 the office of the State Public Defender moved to substitute Llamas' attorney due to a conflict of

2

interest. Llamas appeared with her new attorney at the August 14 hearing and the District Court set trial for January 27, 2015.

¶5 On January 13, 2015, Llamas' new attorney sought leave to withdraw from the case based upon Llamas' request that he do so, and upon conflicts between the two. The District Court conducted a hearing on January 15 at which Llamas agreed that she had irreconcilable conflicts with her attorney. She requested a new attorney and agreed that appointing new counsel would require the District Court to vacate the January 27, 2015 trial date. The District Court granted Llamas' request, vacated the trial date, and ordered the Public Defender to arrange for a new attorney. Her new attorney filed a notice of appearance on January 29, 2015.

¶6 The District Court conducted a status conference on March 12, 2015. The attorneys committed to be ready for trial in 60 days, and the District Court reset the trial for May 26, 2015. On March 19 the District Court reduced bail to $5,000. Llamas did not make bail and remained in jail.

¶7 On May 6, 2015, the defendant moved to dismiss the charges for lack of a speedy trial. The District Court set a hearing on the motion for June 11, 2015, and vacated the May 26 trial date. On June 1, 2015, the attorneys stipulated to vacating the June 11 motion hearing as "unnecessary" and to submitting the speedy trial motion on briefs. The District Court denied the motion to dismiss in its August 3, 2015 order.

¶8 Llamas and her attorney had conflicts over plea offers made by the State. On August 26, 2015, Llamas told the District Court that she wanted to hire her own lawyer, and that she had terminated her Public Defender. Her lawyer moved for leave to withdraw because

3

of conflicts with Llamas. At a hearing on August 27 Llamas told the District Court that she did not want her attorney to withdraw and that she could not represent herself. The District Court denied the attorney's motion to withdraw and set a new trial date for September 22, 2015.

¶9 On September 10, 2015, Llamas and her attorney appeared in District Court. She stated that she did not have a plea agreement with the State but wanted to plead guilty to the robbery. After questioning Llamas in detail about her knowledge of the situation and the consequences of the proposed plea, the District Court accepted her guilty plea to felony robbery with the use of a weapon. The District Court sentenced Llamas on November 3, 2015, giving her credit for 526 days spent in jail.

## STANDARD OF REVIEW

¶10 The issue of whether a defendant has been provided a speedy trial is a question of law, and a district court's decision is reviewed to determine whether it is correct. *State v. Hodge*, 2014 MT 308, ¶ 12, 377 Mont. 123, 339 P.3d 8.

¶11 Claims of ineffective assistance of counsel are mixed questions of law and fact that this Court reviews de novo. *St. Germain v. State*, 2012 MT 86, ¶ 7, 364 Mont. 494, 276 P.3d 886.

## DISCUSSION

¶12 *Issue One: Did the District Court err in denying Llamas' motion to dismiss for failure to provide a speedy trial?*

¶13 The defendant in a criminal case has a right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution, and under Article II, Section 24

4

of the Montana Constitution. *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815. Determining whether there has been a speedy trial depends upon weighing the conduct of the prosecution and the defendant, *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2191-2192 (1972), so that evaluation of speedy trial claims is necessarily relative and depends upon the circumstances of each case. *Hodge*, ¶ 15. A speedy trial analysis is structured around four considerations: the length of the delay; the reasons for the delay; the accused's response to the delay; and the prejudice to the accused as a result of the delay. *Hodge*, ¶ 15.

¶14 This Court has adopted a 200-day "trigger date" that allows a defendant to raise the speedy trial issue. That is, if more than 200 days elapsed between the time the defendant is charged and the time the case is set to go to trial, the court should consider the defendant's speedy trial argument. *State v. Velasquez*, 2016 MT 216, ¶ 9, 384 Mont. 447, 377 P.3d 1235. If less than 200 days elapsed, then the defendant may not raise the speedy trial issue. *State v. Brekke*, 2017 MT 81, ¶ 13, 387 Mont. 218, 392 P.3d 570.

¶15 As noted, the District Court denied Llamas' motion to dismiss for lack of speedy trial. The District Court examined the procedural history of the case beginning with Llamas' arrest, through the motion to dismiss and briefing on that motion. The District court summarized the applicable law and structured its analysis in terms of the established factors of the length of the delay; the reasons for the delay; the accused's responses to the delay; and the prejudice to the accused resulting from the delay.

¶16 The District Court determined that more than 200 days had passed since Llamas' arrest, and so she passed the threshold of time for raising a speedy trial claim. The District

5

Court also held that 375 days had passed between arrest and the "effective" trial date of May 26, 2015. The District Court noted that this delay time was longer than in some reported cases and shorter than in others, but that length of the delay alone is not determinative of a speedy trial claim. The longer the delay after 200 days the stronger is the presumption of prejudice to the defendant and the heavier is the State's burden to justify the delay. *State v. Zimmerman*, 2014 MT 173, ¶ 14, 375 Mont. 374, 328 P.3d 1132.

¶17 The District Court then examined each discrete period of delay. The District Court attributed 5 days prior to filing the information to the State for lack of diligence. The District Court attributed to the State the time between arrest and January 13, 2015, the date defense counsel moved to withdraw, as institutional delay. On January 13 Llamas' attorney moved to withdraw from the case at her request and Llamas was aware that this would delay the trial that had been set for January 27, 2015. While the Public Defender appointed new counsel for Llamas within a short time, the next activity in the case was a March 12, 2015 status conference. The District Court only assigned 14 days of the delay to Llamas' desire for a new attorney, and the remaining 44 days to the State as institutional delay.

¶18 The District Court determined that the 75-day delay between the March 12 status conference and the new May 26, 2015 trial date was institutional delay attributable to the State. The District Court attributed only 14 days of delay to Llamas' motion to dismiss to her attorney. In summary, the District Court found a total of 375 days of delay, attributing 14 to Llamas and the rest to the State. The State's delay was "deemed institutional" and assigned the lowest level of scrutiny.

¶19 The District Court considered the factor of Llamas' response to the delay. The District Court noted that Llamas made a timely demand for speedy trial, but also that she acquiesced in delays caused by her request for a different attorney. Because that request came only a couple of weeks prior to the January 27, 2015 trial setting, the result was that the trial date was vacated to give her new attorney time to prepare. The District Court advised Llamas at that time that her request for a new attorney would result in loss of the trial setting, and she agreed to proceed with the substitution.

¶20 As to the factor of prejudice to the defendant, the District Court examined whether there was oppressive pretrial incarceration; whether there was undue prolonged disruption to the defendant's life, involving aggravated anxiety or concern; and whether the delay impaired the defendant's ability to present an effective defense. *Zimmerman*, ¶ 28. Llamas was in jail for the entire period, unable to post bond even though the District Court reduced her bail to $5,000. The District Court found that this time in jail weighed in favor of finding prejudice. As to the disruption of life factor, the District Court noted that the parties waived the scheduled evidentiary hearing, and that the filed documents "shed no light" on Llamas' claimed prejudice. Importantly, the District Court found that Llamas presented no evidence that her ability to defend the charges had been impaired.

¶21 In summary, the District Court found that Llamas had not been deprived of a speedy trial. The District Court found no evidence that the State acted intentionally or in bad faith to hamper Llamas' interests. The District Court found that the vast majority of the delay time was due to "institutional delay" not sought by the State, and "in the absence of an evidentiary foundation" there was no basis for finding undue prejudice to Llamas.

7

¶22 On appeal Llamas relies upon the length of the delay as presumptively prejudicial and practically all attributable to the State. She also argues that her pretrial detention was oppressive, yet there is very little in the record to support her assertions. While the length of the delay entitled Llamas to some presumption of prejudice, such presumed prejudice will not weigh heavily in a defendant's favor except in the rare case of governmental bad faith or "other egregious conduct." *Brekke*, ¶ 19.

¶23 Therefore, based upon the record before the District Court when it considered the speedy trial issue, we affirm the District Court's analysis and the conclusion that Llamas did not demonstrate entitlement to dismissal of the charges.

¶24 *Issue Two: Did Llamas receive ineffective assistance of counsel in regard to her motion to dismiss for failure to provide a speedy trial?*

¶25 Alternatively, Llamas contends that her attorney provided ineffective assistance by agreeing to vacate the evidentiary hearing on her speedy trial motion. She contends that the hearing would have allowed her to present substantial evidence of the prejudice she suffered during her confinement in jail. She contends that the absence of that evidence was the primary reason the District Court did not give any material weight to the prejudice factor in its speedy trial analysis. She requests that this Court remand to the District Court for a hearing on speedy trial issues so that she can present her evidence.

¶26 This Court evaluates claims of ineffective assistance of counsel under the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. First the defendant must show that her attorney's performance was deficient by demonstrating that it fell below an objective

8

standard of reasonableness. *Whitlow*, ¶ 14. There is a strong presumption that the attorney's performance fell within the wide range of reasonable professional assistance, *Whitlow*, ¶ 15, because there are "countless ways to provide reasonable assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Second, the defendant must show that her attorney's deficient performance prejudiced the defense. *Whitlow,* ¶ 10. This requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶27 Claims of ineffective assistance of counsel can be decided upon direct appeal when they are record-based; where the record on appeal fully explains counsel's performance. *State v. Fender*, 2007 MT 268, ¶ 9, 339 Mont. 395, 170 P.3d 971. Here the record does not provide adequate information for this Court to evaluate the reasons for counsel's decisions. Llamas' can present her claims of ineffective assistance in a petition for postconviction relief pursuant to § 46-21-101, MCA. A district court considering a petition for postconviction relief may hold an evidentiary hearing, § 46-21-201, MCA, and must enter findings of fact and conclusions of law, § 46-21-202, MCA. The petition must identify all facts that support the claims for relief, *Kelly v. State*, 2013 MT 21, ¶ 9, 368 Mont. 309, 300 P.3d 120, and the petitioner has the burden to show by a preponderance of the evidence that the facts justify relief. *Griffin v. State*, 2003 MT 267, ¶ 10, 317 Mont. 457, 77 P.3d 545.

¶28   If Llamas files a petition for postconviction relief, she has established that the interests of justice require that she be assigned counsel by the Office of the State Public Defender pursuant to § 46-21-201(1)(a), MCA.

**CONCLUSION**

¶29   While we have upheld the District Court's denial of Llamas' speedy trial motion, we do so expressly without prejudice to Llamas filing a petition for postconviction relief on the issue of effective assistance of counsel.

¶30   Affirmed.


/S/ MIKE McGRATH


We Concur:

/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER


Justice Laurie McKinnon, dissenting.

¶31   I would reverse on Issue Two and hold that the record establishes Llamas was denied the effective assistance of counsel when counsel waived an evidentiary hearing, thus foreclosing any opportunity for the court to make findings on factors two (reasons for the delay) and four (prejudice resulting from the delay). I would remand for an evidentiary hearing with new counsel on this single issue. If Llamas is successful in demonstrating a denial of her right to speedy trial, then her conviction must be vacated. If she is unsuccessful on remand, then her judgment and sentence remains as ordered. I would not

10

address the merits of the speedy trial motion, as we do here in Issue One, because to do so in the absence of any evidentiary findings as to *Ariegwe* factors two and four is futile.

¶32 We stated in *Ariegwe* that the court "must, of necessity, enter findings of fact and conclusions of law with respect to each of the four factors *and* how the four factors were balanced against each other. Without these findings of fact and conclusions of law, appellate review of the court's final disposition of the claim is, as a practical matter, impossible, and we will be forced to remand the case to the trial court in such situations." *Ariegwe*, ¶ 117 (emphasis in original). "A court presented with a speedy trial motion must first make factual findings and then determine whether the factual circumstances amount to a speedy trial violation." *Ariegwe*, ¶ 119. Here, the District Court found in favor of Llamas regarding factor one, length of delay, because Llamas was incarcerated for 175 days beyond the 200-day speedy trial threshold. The District Court also found that Llamas had timely asserted her right to a speedy trial. Thus, factor three, Llamas' response to the delay, was decided in her favor. These factors, however, are particularly susceptible to resolution by review of the pleadings, motions, and case register. It may not be necessary to have evidence presented to determine the presence or absence of particular and relevant factual circumstances in resolving the length of delay and whether a defendant has asserted his or her right to a speedy trial.

¶33 However, with respect to factor two, reasons for the delay, the District Court found that multiple withdrawals by defense counsel contributed to the delay. The District Court recalled that at one hearing held on such a motion, Llamas "expressed concern about a possible continuance, but she confirmed that communications between her and [defense

11

counsel] were totally broken down and that she was aware this necessitated a continuance." Llamas is alleged to have been suffering from untreated and deteriorating mental illnesses: bipolar disorder, post-traumatic stress disorder, and anxiety, which worsened during her pretrial incarceration. An evidentiary hearing would have allowed for examination of the reasons for the breakdown of communications with counsel and the necessity for appointment of new counsel and consequent continuance. These considerations potentially would have been relevant to the assignment of and weight to be attributed to the delay. The substitution of counsel happened on more than one occasion, with similar reasons proffered, and was charged against the Defendant by the District Court.

¶34 In addressing factor four, prejudice to the defendant, the District Court stated:

> As noted above, the parties stipulated to submission of the motion to dismiss on the briefs, the attached documents, and the entire record. The Defendant attached documents to her reply brief, but such documents shed no light on her claim of undue disruption in her life or aggravated anxiety. The Defendant did not offer witness testimony or affidavits to corroborate her argument regarding alleged unreasonable disruption and stress.

As a result, the District Court attributed "little weight in the speedy trial analysis" to Llamas' "bald assertion" of prolonged disruption to her life and aggravated anxiety. With respect to impairment of her defense, the District Court observed that the Defendant "presented no evidence to show . . . potential loss of evidence [or witnesses] resulting from the delay."

¶35 No single factor under *Ariegwe* is controlling or predominates over another. *Ariegwe*, ¶¶ 104-05. However, here, Llamas prevailed on at least two of the four factors. The remaining factors, reasons for the delay and prejudice to Llamas, were distinctly

12

factually driven, particularly given the circumstances here, and thus necessitated a hearing. Waiver of an evidentiary hearing on a speedy trial motion, which *Ariegwe* instructs must be resolved upon findings of fact, was deficient conduct under *Strickland*. The record establishes that defense counsel erroneously represented that a hearing was not "necessary." There was no plausible justification for relinquishing two of the four *Areigwe* factors by failing to present supportive evidence; and there was no plausible tactical advantage for failing to establish an evidentiary foundation for factors two and four or to create a record on appeal. I would find, based on this record and the requirements of *Areigwe*, that defense counsel's conduct in waiving an evidentiary hearing was deficient.

¶36 Llamas has also met the second prong of *Strickland* requiring that she demonstrate prejudice. Llamas must establish "only that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different." *State v. Becker*, 2005 MT 75, ¶ 21, 326 Mont. 364, 110 P.3d 1. Here, the District Court concluded that the record was insufficient for it to factually determine whether Llamas was prejudiced by her pretrial incarceration. Llamas therefore lost the opportunity of having her speedy trial motion resolved in accordance with *Ariegwe's* requirements that findings of fact be made by the trial court. She asks now only for the opportunity to present evidence of undue prejudice to establish her speedy trial claim.

¶37 I would remand for an evidentiary hearing on Llamas' speedy trial motion, a hearing she was entitled to have in the first instance. I would not take the circuitous route, as the Court has, of sending the issue for a collateral determination to assess the reasons for counsel's waiver of an evidentiary hearing. Whatever reason defense counsel might offer

13

for waiving a hearing would not justify relinquishment of Llamas' speedy trial motion—one counsel deemed important enough to preserve when Llamas pleaded guilty. Our own precedent makes it clear that a speedy trial motion is factually driven and requires findings of fact on each factor. The detention of a defendant allegedly suffering from an untreated serious mental health illness with a demonstrated inability to communicate with counsel, in particular, compels that an evidentiary hearing be conducted. The District Court's own statements that it could not find in Llamas' favor on at least one of the factors establishes that Llamas was prejudiced by the waiver. Significantly, the record is not silent as to counsel's conduct; it is only silent as to the reasons for the delay and the prejudice to Llamas. This distinction is lost by the Court. There is no explanation needed here from counsel regarding the decision to waive a hearing. The decision to waive was deficient and ineffective representation of Llamas' interest in prevailing on her speedy trial motion—which she lost. What is needed here is evidence garnered through a hearing, allowing for the assessment of all the speedy trial factors. I would not prolong these proceedings any longer as there is no plausible justification for waiver of an evidentiary hearing under these circumstances.

¶38 To the extent the Court concludes otherwise, I dissent.

/S/ LAURIE McKINNON

14