FILED

08/31/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0477

DA 19-0477

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 217N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TAMMY JANE SMITH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 19-179
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Johnna K. Sutton, Johnna K. Sutton Law, P.C., Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  July 21, 2021

Decided:  August 31, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Tammy Jane Smith (Smith) appeals from the Order Denying Motion to Dismiss for Speedy Trial issued by the Yellowstone County Justice Court on November 1, 2018, and the Order affirming such issued by the Thirteenth Judicial District Court, Yellowstone County, on May 23, 2019. We reverse and remand for dismissal.

¶3 Smith was involved in a single-vehicle accident on June 12, 2016. At that time, she provided law enforcement with a statement and a blood sample.[1] Results of her blood sample were reported by the Montana State Crime Lab in a Toxicology Report of August 30, 2016. On November 14, 2016, over five months after the accident and two and a half months after the toxicology report, the Billings City Attorney's office filed a "draft" complaint purporting to charge Smith with driving under the influence (DUI), a misdemeanor. This Complaint, however, was never served on Smith and, due to a conflict, the City Attorney's Office referred the matter to the Yellowstone County Attorney's Office (YCAO) for prosecution. On May 4, 2017, nearly a year after the accident, YCAO filed a

---

[1] She also admitted to law enforcement she had taken prescription medication prior to the accident.

complaint in the Yellowstone County Justice Court charging Smith with DUI (second offense), a misdemeanor. An arrest warrant was issued the next day, May 5, 2017. The warrant was not served on Smith until December 27, 2017—nearly 8 months after it was issued.[2]

¶4     Smith made an initial appearance in Justice Court on December 28, 2017, and was released from jail with conditions that included pretrial drug monitoring. The Justice Court initially set bench trial for March 22, 2018, or jury trial for April 27, 2018, and an omnibus hearing for February 8, 2018. Thereafter, a number of mishaps occurred which were not Smith's fault. First, the Justice Court, sua sponte, re-set the omnibus hearing from February 8, 2018, to February 22, 2018. Smith did not appear for the omnibus hearing due to delay in the public defender's office (OPD) failing to provide her notice of counsel's appointment until after the February 22, 2018 hearing had passed. Next, because of her non-appearance at the omnibus hearing, the Justice Court vacated the jury trial set for April 27, 2018, but maintained the bench trial for March 22, 2018. Three days before the scheduled bench trial, the State filed a motion requesting a continuance due to witness unavailability. On March 22, 2018, Smith appeared with counsel to her originally-scheduled bench trial date. At that time, Smith's counsel explained the delay in notifying Smith of counsel's appointment and its resulting failure of her appearance at the February 22, 2018 omnibus hearing. Smith's counsel requested that if the court was

---

[2] Although Smith resided at the same address throughout the pendency of the case, it appears she had not updated her address with the DMV and her updated address was evidently not known to law enforcement until her court appearance on December 28, 2017.

granting the State's motion to continue the trial, it be re-set for a jury, rather than bench, trial. The court granted the State's motion for a continuance and re-set the matter for a jury trial on April 20, 2018. As this jury trial date was one week sooner than it was originally set for, it is clear no delay was caused by Smith requesting a jury trial.

¶5     Shortly before the trial date, the State again filed a motion requesting continuance of the trial due to witness unavailability. Prior to any response by Smith, the court re-set the jury trial to June 15, 2018. The parties appeared on June 15, 2018. At that time, Smith related frustration at making numerous attempts to contact her counsel to prepare for trial, but not being successful. Smith's counsel confirmed that the OPD phone system had been malfunctioning and asserted Smith should not be penalized for OPD's communication equipment problems. The State expressed it would have difficulty with witness availability if trial was set in June or July. The court characterized the discussion as a "joint motion to continue" the trial but, for speedy trial purposes, assessed the delay from June 15, 2018, to July 20, 2018, the date to which it re-set the trial, against Smith.

¶6     Smith appeared ready for trial on July 20, 2018, when the next mishap occurred. A substitute judge was presiding in Justice Court that day. The substitute judge sua sponte continued the trial to August 31, 2018. This date was over two years after the initial accident and 485 days after Smith was charged in Justice Court on the misdemeanor charge—of which only 36 days of delay were attributable to Smith for speedy trial purposes. [3]

---

[3] The parties dispute as to when the speedy trial clock began. Smith asserts the speedy trial clock should commence on November 14, 2016, when the Billings City Attorney filed its "draft"

4

¶7 Smith again appeared ready for trial on August 31, 2018, and the Justice Court again sua sponte continued the trial to September 14, 2018—499 days after Smith was charged with the misdemeanor offense in Justice Court. This prompted Smith to raise the issue of a violation of her right to speedy trial. At Smith's request, the Justice Court vacated the September 14, 2018 trial date and set a status hearing for September 13, 2018. On September 12, 2018, Smith filed a written motion to dismiss asserting both her statutory right under § 46-13-401(2), MCA, and constitutional right to a speedy trial were violated. At the status hearing, the Justice Court set an evidentiary hearing on Smith's speedy trial motion for October 4, 2018, and re-set trial for November 16, 2018.

¶8 Following hearing on October 4, 2018, the Justice Court issued its written Order Denying Motion to Dismiss for Speedy Trial on November 16, 2018. The November 16, 2018 trial date was 888 days after the date of the accident on June 12, 2016, and 562 days from the date Smith was charged in Justice Court. In its Order, the Justice Court attributed delay as follows:

> 1) 326 days pre-charge period—June 12, 2016 to May 4, 2017—not charged as delay to either party.

---

complaint against Smith as that was the date she became "an accused." *State v. Longhorn*, 2002 MT 135, ¶ 22, 310 Mont. 172, 49 P.3d 48 (concluding one becomes "accused" when a criminal prosecution has begun), *overruled, in part, on other grounds by Giambra v. Kelsey*, 2007 MT 158, ¶ 27, 338 Mont. 19, 162 P.3d 134. The State contrarily asserts, consistent with the Justice Court's conclusion, the speedy trial clock commenced on May 4, 2017, the date the YCAO filed its complaint in the Justice Court, as that was the date the prosecution formally began. We need not analyze whether Smith became "an accused" earlier than May 4, 2017, as even if we assume she did not become "an accused" until May 4, 2017, her right to a speedy trial was violated and adding in another 172 days of delay attributable to the State does not alter that determination.

5

2) 238 days attributable to the State—May 5, 2017 (date warrant issued) to December 28, 2017 (date of initial appearance)—as institutional delay.

3) 169 days attributable to the State—December 29, 2017 to June 15, 2018—and weighing heavily against the State due to lack of diligence in correct identification of its expert witness.

4) 154 days—June 15, 2018, to November 16, 2018—to Smith.[4]

¶9 After receiving the Justice Court's order denying her speedy trial motion, Smith pled guilty to the misdemeanor DUI on February 1, 2019, reserving her right to appeal the speedy trial issue. Smith appealed to the District Court which affirmed the Justice Court and adopted the Justice Court's attribution of delay days between the State and Smith.

¶10 We review a district court's review of a lower court decision as if the appeal had originally been filed with this Court applying the appropriate standard of review. *City of Helena v. Heppner*, 2015 MT 15, ¶ 9, 378 Mont. 68, 341 P.3d 640. Whether a defendant's right to speedy trial has been violated is a question of law, and we review the trial court's factual and legal decisions to determine if its findings of fact are clearly erroneous and whether its legal conclusions were correct. *Heppner*, ¶ 10.

¶11 We turn first to the Justice Court's factual findings to determine if they are clearly erroneous. The Justice Court first attributed the delay between the State and Smith, then

---

[4] In its Order, the Justice Court vacillates between including and not including the end date in its calculations, resulting in one-day variations in its calculations of time. These one-day variations are not material to our decision here. For consistency in this Opinion, we include the end date in each of our calculations of time.

determined there was no evidence the prosecution used the considerable delay to gain a tactical advantage, discounted Smith's testimony regarding her lost work opportunities as speculative, concluded there was no evidence her anxiety was exacerbated by the delay versus merely facing a conviction, and denied Smith's motion.

¶12 We agree the record supports the Justice Court's characterization of delay from May 5, 2017 to June 15, 2018—a total of 407 days, 169 of which are weighed heavily against the State.[5] The record, however, does not support the Justice Court's characterization of all delay after June 15, 2018, being attributable to Smith. Smith appeared for trial on June 15, 2018. At that time, she advised the court she had been trying to contact her attorney for some time but had been unable to get through on the OPD phone lines. Smith had her cell phone available at the hearing to show the court. Smith's counsel confirmed Smith's attempts at contact and that such had been unsuccessful through no fault of Smith but rather due to malfunctioning of the OPD's phone system. Based on the discussion among the parties and the court on June 15, 2018, the Justice Court re-set trial

---

[5] Although the State did not assert a counter-appeal contesting the Justice Court's assessment and characterization of delay, the State argues there is no evidence in the record to support the Justice Court's finding the State misidentified the expert witness from the crime lab such that continuances for lack of availability of its expert were possibly not necessary. The State asserts it did not misidentify its expert and the delay occasioned by its two continuation requests should be charged to the State as institutional delay that has little to no weight against the State. Review of the record shows that in this uncomplicated, straightforward misdemeanor DUI case where Smith did not object to the crime lab witness appearing via video, the State failed to assure timely availability of its crime lab expert requiring two continuances. As such, the Justice Court's finding of negligence weighing heavily against the State for the delay occasioned by the continuances it requested was not clearly erroneous.

for July 20, 2018, specifying that it continued trial as a result of a "joint motion to continue." Despite this, the Justice Court then attributed the 36-day delay to Smith.[6]

¶13    Smith appeared ready for trial on July 20, 2018, at which time a substitute justice court judge sua sponte continued trial to August 31, 2018. This 43-day delay is clearly attributable to the State as institutional delay, and it was clearly erroneous for the Justice Court to conclude otherwise. The State concedes this. Smith again appeared on August 31, 2018, ready for trial and again it is unrefuted that the Justice Court sua sponte continued trial to September 14, 2018. This additional 14-day delay is clearly attributable to the State as institutional delay, and it was clearly erroneous for the Justice Court to conclude otherwise. The State likewise concedes this. We agree with the Justice Court that the record does not support that the prosecution utilized the delay to gain tactical advantage and Smith does not assert that. Nevertheless, at a minimum, the State is responsible for 463 of the 499 days from May 4, 2017, the date Smith was charged, to the September 14, 2018 trial date with 169 days of the delay attributable to the State weighing heavily against it.[7]

---

[6] Although arguably this 36-day delay could be attributed to the State as institutional delay as overall operation of OPD is a governmental function of the State of Montana, we cannot conclude that the Justice Court's finding in this regard is clearly erroneous, and we attribute this 36-day delay to Smith for speedy trial purposes.

[7] While there is no need for us to specifically consider the 63 additional days of delay from September 15, 2018, to November 16, 2018 (the last trial date set) or the additional days from November 16, 2018, to February 1, 2019 (the date Smith entered her guilty plea) as the unnecessary delay preceding September 14, 2018, in itself, warrants dismissal of the charge against Smith.

¶14 Smith asserts the Justice Court's findings regarding the impact of her anxiety and lost work opportunities were erroneous. We agree. Smith presented unrefuted testimony of experiencing ongoing anxiety and frustration throughout the entire pendency of her case, was seeing a physician and taking medications to address the anxiety, experienced financial hardship for some time when she was required to pay for drug testing as a condition of her release, and that she lost two work promotions due to the pending charge. While some degree of anxiety, stress, and life interruption are reasonably expected when facing a criminal charge, the proper analysis is the degree to which delay of trial aggravated them. *City of Billings v. Peterson*, 2004 MT 232, ¶ 36, 322 Mont. 444, 97 P.3d 532. Here, the Justice Court failed to consider the length of anxiety and life interruption experienced by Smith as compared to that occurring in a typical misdemeanor charge resolvable within six months, or at least in less than 200 days, to determine whether the delay unduly prolonged the disruption of her life or aggravated the anxiety inherent in being an accused. The sheer length of time Smith was on bail with restrictions on liberty and living under the shadow of anxiety and suspicion combined with her lost work opportunities evidence a significant degree of aggravation of anxiety and life interruption, warranting a heavy presumption of prejudice. *See State v. Ariegwe*, 2007 MT 204, ¶ 96-97, 338 Mont. 442, 167 P.3d 815; *State v. Llamas*, 2017 MT 155, ¶ 16, 338 Mont. 53, 402 P.3d 611 ("The longer the delay after 200 days the stronger is the presumption of prejudice to the defendant and the heavier is the State's burden to justify the delay."). The Justice Court's finding that "no evidence exists that [Smith's] anxiety was aggravated or exacerbated due to the delay versus the nature of facing a conviction for DUI in general" was clearly erroneous.

9

¶15   Finally, Smith asserts the Justice Court's finding that she "provided no evidence that the delay caused any impairment of the defense at trial" was clearly erroneous. We agree. Smith provided unrefuted testimony that she planned to call Dr. Kirkland, her treating physician of over 11 years, to establish the legitimacy of the medication identified by the Toxicology Report to be in her blood. Dr. Kirkland had moved out of state during the pendency of Smith's case and was no longer available as a witness. In light of this unrefuted testimony, it was clearly erroneous for the Justice Court to find Smith presented "no evidence" of impairment to her defense.

¶16   The Sixth and Fourteenth Amendments of the U.S. Constitution and Article II, Section 24, of the Montana Constitution guarantee defendants a right to a speedy trial. *Ariegwe*, ¶ 20. In Montana, defendants charged with a misdemeanor offense have a separate and distinct statutory right to be brought to trial within six months of entry of plea pursuant to § 46-13-401(2), MCA. Analysis of the misdemeanor statutory speedy-trial right is conducted separately from a constitutional speedy-trial analysis and is an entirely different analysis. *Heppner*, ¶ 13. Generally, it is unnecessary to apply the constitutional analysis in misdemeanor cases as the statutory protection is more restrictive than the constitutional standard. *State v. Hodge*, 2014 MT 308, ¶ 14, 377 Mont. 123, 339 P.3d 8.

¶17   Although Smith asserted violation of both her statutory and constitutional rights to a speedy trial below,[8] on appeal Smith asserts only violation of her constitutional right to a speedy trial. As such, we limit our analysis to that issue.

---

[8] With regard to her statutory right, Smith argued that as her trial date of September 14, 2018, was 80 days past the statutory deadline of six months for misdemeanors as provided in § 46-13-401(2),

¶18 The constitutional right to a speedy trial is necessarily relative and depends upon the circumstances of the case. *Ariegwe*, ¶ 104. To determine whether the delay in bringing the accused to trial amounts to a constitutional violation, we consider (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused as a result of the delay. *Ariegwe*, ¶¶ 106-11. These factors must be balanced to determine whether the accused has been deprived of her right. *State v. Zimmerman*, 2014 MT 173, ¶ 12, 375 Mont. 374, 328 P.3d 1132. No one factor is dispositive by itself; the factors are related and must be considered together with any other relevant circumstances. *Ariegwe*, ¶ 112. Each factor's significance will vary from case to case. *Ariegwe*, ¶ 105.

¶19 The speedy trial clock begins to run when the defendant becomes an accused. *Ariegwe*, ¶ 42. Although Smith asserts that occurred on November 14, 2016, when the draft complaint was filed in Billings Municipal Court, we determine Smith became an accused when the complaint was filed on May 4, 2017, in the Justice Court. Between the filing of the complaint on May 4, 2017, to trial on September 14, 2018, the last trial date before Smith filed her speedy trial motion on September 12, 2018, 499 days elapsed, of which only 36 days (June 15, 2018 to July 20, 2018) is attributable to Smith for speedy

MCA, the prosecution must be dismissed unless the State could show good cause for the delay. The State agreed but asserted good cause for the delay: "While [Smith] may prevail on the first prong of the statutory right to a speedy trial analysis, the State has good cause to satisfy the second prong." The State argued its "good cause" was related to various warrants and proceedings involving violations of Smith's release order, which it now concedes caused no trial delay.

trial purposes.[9] Of the 463 days attributable to the State as of September 14, 2018, 169 days weighed heavily against it with the remaining 294 days of institutional delay weighing less heavily against it.

¶20 Smith acquiesced to the 36-day delay from June 15, 2018, to July 20, 2018, occasioned by OPD's telephone system malfunction resulting in her not being ready to proceed to trial on June 15, 2018. Acceptance of this delay, however, does not support a finding that Smith did not want to proceed to trial. Indeed, she appeared on two subsequent trial dates, ready for trial, only to have the Justice Court sua sponte continue her trial on its own motion. It was not until after the second unilateral continuance by the Justice Court, 485 days after becoming an accused, when Smith sought to enforce her speedy trial right.

¶21 Once the 200-day threshold passes, a presumption of prejudice of the accused arises. *Ariegwe*, ¶ 143. The longer the delay after 200 days, the stronger the presumption of prejudice, resulting in an increasingly heavier burden on the State to justify the delay. *Llamas*, ¶ 16. Smith provided unrefuted testimony as to suffering a variety of prejudices resulting from the excessive delay. She described anxiety from the prolonged period of accusation and frustration and concern over the continued delays of her case. She testified she had been passed over for promotion two times such that she remained a part-time sales clerk rather than holding a full-time managerial position at her employment. She incurred

---

[9] We note that the delay associated with Smith's pursuit of enforcement of her speedy trial rights—at least from September 15, 2018, to the November 16, 2018 trial date or to her entry of plea on February 1, 2019—does not weigh heavily against her and we need not consider that time as the delay prior to the trial date of September 14, 2018, alone constitutes a violation of Smith's constitutional right to speedy trial warranting dismissal.

significant expense for pretrial drug testing, including a $300 initial fee followed by a $77 per week fee for monitoring services. While she eventually qualified for a subsidy to pay the ongoing monitoring fees, she was not reimbursed the funds she expended prior to the subsidy and the drug testing limited her freedom and required she miss work to attend these appointments. Finally, Smith provided unrefuted testimony that she planned to call Dr. Kirkland, her treating physician of over 11 years, to establish the legitimacy of the medication identified by the Toxicology Report to be in her blood and its effects. Dr. Kirkland, though, had moved out of state during the pendency of Smith's case and was no longer available as a witness.

¶22 Given the clearly erroneous findings discussed above and the simplistic, straightforward nature of the offense charged and the limited investigation needed, we conclude the record does not support the Justice Court's balancing of the *Ariegwe* factors. While an accused will reasonably experience some anxiety, concern, and disruption of life inherent with being charged with an offense, we must focus on the extent to which pretrial delay unduly prolonged such. *Ariegwe*, ¶ 97. The record shows this was a simple, straightforward misdemeanor DUI. It did not require extensive investigation—the investigation was basically complete on the day of the accident—or pre-trial discovery. Smith was cooperative with the investigation providing a statement and admitting she had taken prescription medication prior to the accident. Smith also provided a blood sample near the time of the accident on June 12, 2016, and the results of the blood test were summarized in a Toxicology Report from the Montana State Crime Lab on August 30, 2016—over eight months before the State filed its complaint against Smith on May 4, 2017.

13

Although much was made by the Justice Court regarding the various pre-trial release violations asserted by the State and warrants issued throughout the pendency of the case, the record does not support that any of the pre-trial release proceedings delayed trial in any way. The State concedes this is accurate.[10]

¶23 The uncomplicated nature of the case and investigation did not warrant the excessive delay and attendant anxiety, financial burden, or prejudice to defense Smith experienced.[11] While Smith was responsible for only 36 days of the delay, this delay is not weighed heavily against her as it was resultant from OPD's malfunctioning communication equipment, not her conduct. Despite only being incarcerated one day, Smith experienced prolonged anxiety and frustration with financial and employment prejudice lasting well over twice the length one would reasonably be expected to experience when accused of a simple misdemeanor DUI. Additionally, her defense was prejudiced as a result of the delay with the loss of her primary witness, Dr. Kirkland. The State failed to meet its burden to justify the delay. Reversal with remand to dismiss the DUI charge against Smith is appropriate.

---

[10] In the Justice Court, the State asserted good cause for the delay because at various times throughout the pendency of the case, the court had issued warrants for Smith's arrest for asserted violations of release conditions. Upon review of the record, it is clear that the warrants and revocation proceedings occurring during the pendency of the case did not delay trial. The State now concedes this: "Although Smith was subject to revocation proceedings multiple times during the course of the case due to alleged violations of her release order, the record does not indicate that these revocation proceedings directly caused her trial to be delayed or continued. Consequently, the State agrees with Smith that this period should be attributable to the State as institutional delay."

[11] The State provided no reason the case should not have been able to be tried within the statutory six-month time period for misdemeanor offenses, let alone the 200-day threshold period under our constitutional speedy trial test.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25 Reversed and remanded for dismissal.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE