FILED

06/27/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0479

DA 21-0479

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 124N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

DANIEL M. ALLEN,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DC-20-17
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Chad Wright, Appellate Defender, Jeff N. Wilson, Assistant
Appellate Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim,
Assistant Attorney General, Helena, Montana

          Naomi R. Leisz, Sanders County Attorney, Thompson Falls, Montana

Submitted on Briefs:  April 19, 2023

Decided:  June 27, 2023

Filed:

                                                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Daniel Allen appeals the Twentieth Judicial District Court's denial of his motion to dismiss for lack of speedy trial. Allen claims that he was denied a speedy trial when 579 days elapsed between his arrest on September 19, 2019, and his change of plea. But because the State did not file charges or issue a warrant for Allen's arrest until May 5, 2020, the speedy trial clock did not start until that day. We agree with the District Court that Allen was not prejudiced by the ensuing delay and therefore affirm.

¶3 On September 19, 2019, Deputy Roy Scott was patrolling with Allen's probation officer Lynn Bierwagen as a ride-along passenger. Bierwagen spotted Allen at a gas station with his friend Peggy Porter and informed Scott that she had a warrant for Allen's arrest. When the officers attempted to make contact with Allen, he and Porter fled in his pickup. Law enforcement pursued Allen for approximately 39 miles, during which time Allen exceeded the speed limit and crossed over the center line to prevent law enforcement from passing him. The pursuit concluded when a deputy in Lake County successfully deployed stop sticks, incapacitating Allen's pickup.

2

¶4     At the end of the pursuit, law enforcement found both Allen and Porter "shaking uncontrollably." Allen admitted to ingesting illegal drugs during the pursuit. Law enforcement discovered a loaded semi-automatic handgun and drug paraphernalia in Allen's pickup. During a search of the route taken during the pursuit, law enforcement discovered a second loaded semi-automatic handgun on the westbound lane of the highway. Porter informed law enforcement that Allen ate methamphetamine and marijuana and passed her multiple bags of a "white powdery substance" during the pursuit. Porter admitted that she ate a "twenty" of methamphetamine during the pursuit. She further admitted to throwing three bags of the powdery substance and one bag of marijuana from the pickup. Law enforcement witnessed bags being thrown from the pickup, and dash camera footage supported Porter's admission.

¶5     At the time, Allen was on conditional release from a prior sentence to the Montana State Prison for two felony convictions. Upon conclusion of the pursuit on September 19, 2019, Officers took Allen into custody and transported him to the hospital, where he received intensive care for three days due to the effects of the drugs he consumed during the pursuit. On September 23, 2019, the Department of Corrections notified Allen that he had committed numerous violations of his conditional release, including possession of dangerous contraband, use or possession of alcohol or drugs, failure to register as a violent offender, failure to report to his probation officer, failure to enter and participate in his required treatment program, and violation of state or federal law. A disciplinary hearing regarding these allegations was held on September 25, 2019. Allen admitted to or was

3

found guilty of all the alleged violations. Consequently, Allen's conditional release was revoked, and he returned to the Montana State Prison to serve the remainder of his preexisting sentence.

¶6 On May 5, 2020, the State charged Allen with felony possession of dangerous drugs, felony tampering, felony criminal endangerment, felony unlawful possession of a firearm by a convicted person, and felony obstruction of justice for the pursuit incident on September 19, 2019. The same day it filed the Information, the State filed an arrest warrant on the new charges. No further action was taken on these charges until Allen filed two pro se motions with the District Court on December 14, 2020: (1) a motion to appoint counsel; and (2) a motion to dismiss for lack of speedy trial. The court appointed counsel on December 21, 2020; Allen requested different counsel less than two weeks later, citing a conflict with his attorney. A different attorney took over Allen's case on December 29, 2020.

¶7 Allen submitted another motion to dismiss for lack of speedy trial on January 11, 2021; he signed it as a pro se defendant. The State moved three days later to set Allen's charges for arraignment. Allen was arraigned on February 2, 2021, pleading not guilty. On February 9, 2021, the State filed an Amended Information, eliminating some of the original charges. The Amended Information charged Allen with felony criminal possession of dangerous drugs, felony tampering with or fabricating physical evidence, and felony criminal endangerment.

4

¶8 The District Court denied Allen's motion to dismiss for lack of speedy trial on February 10, 2021, concluding that the relevant delay of 273 days—May 5, 2020, to the date of Allen's arraignment, February 2, 2021—did not amount to a speedy trial violation because the delays were associated with Allen's preexisting sentence and the COVID-19 pandemic. Though it denied Allen's motion to dismiss, the District Court stated that it would not accept any further continuance by the State and set Allen's matter for an expedited trial. Allen later moved to vacate his trial date, requesting that the court reset the matter for a change of plea hearing. The District Court granted the motion, setting the hearing for April 6, 2021. Allen requested a continuance, and the hearing was moved to April 20, 2021.

¶9 On April 20, 2021, Allen pleaded guilty to felony possession of dangerous drugs and felony criminal endangerment, reserving his right to appeal the denial of his motion to dismiss. The District Court sentenced Allen as a persistent felony offender to five years, none suspended, for his drug possession charge and to ten years, none suspended, for his criminal endangerment charge. The court ordered the two sentences to run concurrently to each other and concurrently to his preexisting sentence, granting Allen credit for time served starting on May 5, 2020.

¶10 We review for clear error the factual findings underlying a district court's speedy trial ruling. *State v. Hesse*, 2022 MT 212, ¶ 6, 410 Mont. 373, 519 P.3d 462 (citation omitted). We review de novo a district court's conclusions of law about a speedy trial violation. *Hesse*, ¶ 6 (citation omitted). The Sixth and Fourteenth Amendments to the

5

United States Constitution and Article II, § 24, of the Montana Constitution guarantee a defendant's fundamental right to a speedy trial. *State v. Ariegwe*, 2007 MT 204, ¶ 20, 338 Mont. 442, 167 P.3d 815.

¶11 We have acknowledged that the right to a speedy trial "has an 'amorphous quality' in the sense that it is 'impossible to determine with precision . . . how long is too long in a system where justice is supposed to be swift but deliberate.'" *State v. Zimmerman*, 2014 MT 173, ¶ 12, 375 Mont. 374, 328 P.3d 1132 (quoting *Barker v. Wingo*, 407 U.S. 514, 521-22, 92 S. Ct. 2181, 2187-88 (1972)). The right to a speedy trial, therefore, depends on the circumstances of the case. *Zimmerman*, ¶ 12. When making this determination we consider four factors: (1) the length of delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) the prejudice to the accused because of the delay. *Ariegwe*, ¶ 34.

*Factor One: The Length of the Delay*

¶12 A speedy trial analysis is triggered if the interval between a criminal accusation and trial is at least 200 days. *Ariegwe*, ¶ 107. Allen argues that the total length of delay was 579 days from his arrest to the disposition of his case. He maintains that he was arrested on the underlying charges on September 19, 2019. The State counters that the total delay was 351 days because the speedy trial clock did not start until May 5, 2020.

¶13 A person is not "accused" for the purposes of speedy trial until the criminal prosecution commences. *Ariegwe*, ¶ 42 (citing *State v. Larson*, 191 Mont. 257, 261 623 P.2d 954, 957-58 (1981)). The speedy trial clock begins to run at the earliest at the

6

time of arrest, filing of a complaint, or filing an indictment or information. *Ariegwe*, ¶ 42 (citation omitted). Allen did not become an accused in the underlying matter until May 5, 2020—the day the Information and arrest warrant were filed on these charges. *Ariegwe*, ¶ 42 (citation omitted). Up to this point, Allen was incarcerated for violating his conditional release on a preexisting sentence.

¶14 Allen argues that the time before May 5, 2020, should count towards his speedy trial calculations because we have attributed delay to the State when it took nearly six months to file charges against a defendant who was arrested for suspected DUI. *See Zimmerman*, ¶¶ 18-20. Allen, however, was not arrested on the underlying charges in September 2019; he was arrested for violating his conditional release on another case. The District Court correctly determined that Allen became an accused for purposes of speedy trial on May 5, 2020, and that at the time of Allen's motion, the delay stretched 73 days past the 200-day trigger date.

¶15 "Courts next consider the extent to which the delay stretches beyond the 200-day trigger date." *Hesse*, ¶ 11 (citing *Ariegwe*, ¶ 107). "The presumption that pretrial delay has prejudiced the accused intensifies over time, and the State's burden to justify the delay becomes heavier the longer the delay." *Hesse*, ¶ 11 (citing *Ariegwe*, ¶ 107). At the time Allen filed his motion to dismiss, his delay was 273 days. On appeal, we consider the additional delays that occurred after Allen's motion to dismiss up to April 20, 2021, the date he changed his plea. This date extended 150 days beyond the 200-day presumption of prejudice.

*Factor Two: Reasons for the Delay*

¶16    "Courts next identify and attribute to the appropriate party each period of delay." *Hesse*, ¶ 12 (citing *Ariegwe*, ¶ 108). Delays that are not caused or affirmatively waived by the defendant are attributable to the State by default, and courts assign weight to each delay based on the reason behind the delay. *Ariegwe*, ¶ 108. "Institutional delays, such as overcrowded court dockets, weigh less heavily against the State than do deliberate or negligent delays." *Hesse*, ¶ 12.

¶17    Allen outlines four periods of delay: (1) the 222 days from his September arrest to the charges brought against him; (2) the 280 days from the State's motion to file charges to his arraignment; (3) the 62 days between his arraignment and original trial date; and (4) the 15 days between the original trial date and his change of plea hearing. Allen argues that the first two periods should weigh heavily against the State. We do not count the first period that Allen identifies because he was not accused of these charges during that time.

¶18    Based on the timing of Allen's motion to dismiss, the District Court considered only the second period of delay identified by Allen. The District Court's order provided the following brief explanation for this delay:

> The Prison refused to transfer the Defendant due to a COVID-19 outbreak. The Defendant was arraigned on February 2. The Defendant was incarcerated on other charges. Based on the parole violations and COVID-19 outbreak this matter has been delayed.

The District Court did not attribute this time to either party and provided no other analysis. The State concedes that this period of delay is properly attributed to the State's lack of diligence. Our review of the record supports the State's concession.

8

¶19 The State bears the burden to diligently prosecute a case. *Ariegwe*, ¶ 69. Failure to diligently prosecute "is obviously . . . weighed more lightly than a deliberate intent to harm the accused's defense, [but] it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Ariegwe*, ¶ 69 (quoting *Doggett v. United States*, 505 U.S. 647, 657, 112 S. Ct. 2686, 2693 (1992)). Allen waited for an arraignment hearing for nearly nine months. This delay appeared to end only after he filed pro se motions to get the State's attention. It is not the responsibility of the accused to ensure the State's diligent prosecution. *Ariegwe*, ¶ 64. We agree with the parties that the time during which Allen sat charged without arraignment is attributable to the State for failing to diligently prosecute Allen's case.[1]

¶20 We acknowledge that Allen's proceedings occurred in the middle of the COVID-19 pandemic and its corresponding upheaval in the trial courts—circumstances beyond the State's control. *See Hesse*, ¶ 7. But the State offers no specific pandemic-related reasons for the lengthy delay, and that delay weighs against the State.

¶21 Allen next argues that the delay from his arraignment to the disposition of his case weighs against the State, albeit lightly because the delay was "part of the normal adjudication process." We attribute institutional delays that are "inherent in the criminal

---

[1] Allen argues 280 days passed from the filing of his charges to his arraignment. The State moved to file its Information on April 28, 2020, and the court granted the motion on May 5, 2020. The State filed the Information on May 5, 2020, changing the case status to "pending." This also was the date that an arrest warrant was issued for Allen in this matter. We use May 5, 2020, for purposes of calculating when Allen was an "accused" and therefore when the speedy trial clock started to run, making this period of delay 273 days long.

justice system due to the court's docket and built-in requirements such as reciprocal discovery, the omnibus and status hearings and pretrial motions" to the State. *Ariegwe*, ¶ 125. The 62 days between Allen's arraignment and the original trial date was due to institutional delay and weighs lightly against the State. Finally, Allen acknowledges that he was responsible for a brief 15-day delay from the original trial date to the change of plea hearing. In sum, 273 days weigh against the State for its lack of diligence in the delay between filing the Information and Allen's arraignment, 62 days weigh lightly against the State for institutional delay between Allen's arraignment and the original trial date, and 15 days weigh against Allen for continuing the change of plea hearing.

*Factor Three: The Accused's Responses to the Delay*

¶22     The third factor in a speedy trial analysis is to evaluate the accused's responses to the delay to determine whether the accused wanted a speedy trial, "which in turn informs the inquiry into whether there has been a deprivation of the right." *Ariegwe*, ¶ 110. Allen asserted his right to a speedy trial twice prior to his arraignment. Allen raised the matter again when he reserved his right to appeal the court's dismissal of his speedy trial claim. Allen evidenced a desire for a speedy trial; this factor weighs against the State. *Hesse*, ¶ 14.

*Factor Four: Prejudice to the Accused*

¶23     Finally, courts assess whether a defendant experienced prejudice as a result of the delay, considering three interests: (1) preventing the accused from experiencing oppressive pretrial incarceration; (2) minimizing the anxiety and concern caused by unresolved

criminal charges; and (3) limiting the possibility that the accused's defense will be impaired. *Hesse*, ¶ 15.

¶24 "[T]he fact that the accused was incarcerated on a separate charge while awaiting trial on the instant charge informs the issue of oppressiveness." *Ariegwe*, ¶ 92 (citing *State v. Highpine*, 2000 MT 368, ¶ 26, 303 Mont. 422, 15 P.3d 938). We have noted, however, that though incarceration on a separate charge is relevant, "it is not dispositive." *Ariegwe*, ¶ 92. Allen argues that he experienced oppressive pretrial incarceration because his pending charges in this case impacted his parole eligibility for his preexisting sentence. He asserts that his conditional release for the preexisting sentence was revoked, in part, due to these pending charges. Review of the record reveals that Allen's release was not revoked due to his charges in this case. The pursuit started because Allen's parole officer had an arrest warrant for violations of his conditional release. The hearing to revoke Allen's release addressed numerous violations of his conditional release, and Allen admitted to or was found guilty of these violations. Further, when Allen later requested parole, the parole board referenced Allen's "poor history in community placement and/or under supervision" and his "anti-social behavior." The parole board did not reference Allen's charges in this case as a reason for its decision. The parole board denied Allen's request for parole on April 22, 2020, before the underlying charges were even filed. The record does not support Allen's contention that he was oppressively incarcerated.

¶25 Allen next argues that he experienced anxiety and concern because of the State's failure to diligently prosecute his case. "[A] certain amount of anxiety and concern is

inherent in being accused of a crime." *Ariegwe*, ¶ 97 (citation omitted). "The crucial question . . . is whether the delay in bringing the accused to trial has unduly prolonged the disruption of his or her life or aggravated the anxiety and concern that are inherent in being accused of a crime." *Ariegwe*, ¶ 97 (citation omitted). Allen has not provided evidence that the delay in his case "prolonged the disruption in his life" beyond what he would have experienced absent the delay. *See Hesse*, ¶ 20. Allen would have been incarcerated regardless of the pending charges due to his violations of the conditional release on his preexisting sentence. Any arguments about his economic hardships, separation from loved ones, or anxiety over COVID-19 are unpersuasive, considering these concerns would exist regardless of the underlying charges in this case.

¶26 Allen argues that not knowing whether he would "return[] to or remain[] in custody on another matter at the conclusion" of his preexisting sentence "interfere[d] with [his] ability to take maximum advantage of his institutional opportunities." Allen offered no example of any such opportunities he may have had in prison from which he was precluded by the pending charges. He would not have discharged his preexisting sentence until April or May 2022, and he has not suggested any likelihood that he would have been released sooner.

¶27 Finally, we consider whether the delay limited Allen's ability to present an effective defense. Courts consider whether the delay weakened an accused's ability to "raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Ariegwe*, ¶ 111 (citation omitted) This is the most serious consideration when assessing

12

prejudice to the accused because the inability of defendants to prepare their cases "skews the fairness of the entire system." *Ariegwe*, ¶ 98. Allen argues that the delay hampered his ability to prepare his defense because the longer the delay continued the more difficult it was to locate and interview Porter as a witness on the tampering charge. The record does not support Allen's contention. Porter's testimony would have had little effect on Allen's defense, even if she recanted her interview with police. Allen spent three days in intensive care at a hospital due to the quantity of drugs he ingested during the pursuit, presumably to hide the evidence from law enforcement. Officers witnessed Porter throwing bags from the pickup. Further, Allen only hypothesizes difficulties finding Porter and potential gaps in her memory. But there is no evidence that Allen attempted to contact Porter without result. The potential absence of Porter at trial does not demonstrate prejudice against Allen.

¶28 We have previously noted that, though a length of delay greater than 200 days entitles an accused "to some presumption of prejudice, such presumed prejudice will not weigh heavily in a defendant's favor except in the rare case of governmental bad faith or 'other egregious conduct.'" *State v. Llamas*, 2017 MT 155, ¶ 22, 388 Mont. 53, 402 P.3d 611 (citation omitted). The record does not reflect bad faith or egregious conduct from the State, and Allen has not provided evidence that the delay caused him prejudice. With no facts in the record indicating prejudice, this factor weighs in favor of the State.

*Balancing the Factors*

¶29    Courts must consider the factors together when assessing whether an accused suffered a violation of the right to a speedy trial. *Ariegwe*, ¶ 112. "No one factor is dispositive by itself; rather, the factors are related and must be considered together with such other circumstances as may be relevant." *Ariegwe*, ¶ 112. Our review of the record reveals that, though the delay largely is attributable to the State, Allen did not suffer prejudice as a result. We conclude, therefore, that Allen's speedy trial rights were not violated.

¶30    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not err when it held that Allen had not suffered a violation of his speedy trial rights. We affirm.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Justice Ingrid Gustafson, concurring.

¶31     I join in the Court's Opinion that Allen's right to a speedy trial was not violated.  A criminal defendant has the constitutional right to a speedy trial.  Mont. Const. art. II, § 24; U.S. Const. amends. VI, XIV.  The right applies once a defendant has been indicted, arrested, or otherwise accused of a crime.  *State v. Laird*, 2019 MT 198, ¶ 45, 397 Mont. 29, 447 P.3d 416 (citing *State v. Passmore*, 2010 MT 34, ¶ 25, 355 Mont. 187, 225 P.3d 1229).  The constitutional right does not apply to the time between the crime's commission and the official accusation.  *Laird*, ¶ 45 (citing *Passmore*, ¶ 25).  "Instead, other mechanisms 'guard against long delay during the preaccusation period.'"  *Laird*, ¶ 45 (quoting *Passmore*, ¶ 25).  Here, I have concerns with the obvious intentional delay in prosecution until Allen completed the remainder of a different pre-existing sentence.  However, as Allen asserts only speedy trial violation and does not assert or raise the issue of preaccusation delay, sua sponte analysis of that delay is not warranted in this situation.

/S/ INGRID GUSTAFSON

15